PEDRO FEDERICO ORTIZ, demandante y recurrente, *v.* FLEMING MOTORS, INC., demandada y recurrida.

Número: R-68-122     Resuelto: 2 de marzo de 1971

*Efraín Goglas Carvajal,* abogado del recurrente; *Carlos E. Colón,* abogado de la recurrida.

El Juez Asociado Señor Ramírez Bages emitió la opinión del Tribunal.

Debemos confirmar el dictamen del tribunal de instancia que declaró sin lugar la demanda en este caso que pretendía responsabilizar a la recurrida por la pérdida de un vehículo de motor que el recurrente compró a la recurrida y que se destruyó por fuego iniciado en la parte posterior del vehículo mientras el recurrente lo conducía próximo a una estación de servicio de gasolina.

La prueba del recurrente, la cual no fue refutada por la recurrida, estableció lo siguiente:

El 15 de marzo de 1967 el recurrente compró a la recurrida un automóvil nuevo marca Vauxhall, modelo Víctor FCW/SW 1967, por la suma de $3,680.

Los mecánicos empleados de la recurrida intervinieron con el automóvil en abril de 1967 para la inspección de las mil millas, para instalarle un radio, cambiar el filtro del aceite, conectar el velocímetro, y evitar que se apagara el motor cuando el vehículo marchaba en baja tensión. El 20 de mayo siguiente intervinieron nuevamente para corregir la luz interior del automóvil que permanecía encendida aun cuando las puertas del mismo estaban cerradas; también le arreglaron el *muffler.*

Nadie más intervino con el vehículo y éste nunca estuvo envuelto en ningún accidente.

El automóvil recibió un uso normal por el recurrente quien lo utilizaba en gestiones personales y de su farmacia en Salinas. Solamente viajó en él desde Salinas a Ponce y Guayama.

El 27 de mayo de 1967, como a eso de la 1:00 de la madrugada, el recurrente, después de asistir a una reunión de un club en el pueblo de Salinas, se dirigió al Barrio Coquí de Salinas y regresó inmediatamente al pueblo. Notó en el camino que el medidor de la gasolina indicaba que le faltaba gasolina. Como los puestos en el pueblo estaban cerrados, marchó hacia un garaje en el sitio Quebrada Yegua que está situado a cinco kilómetros de Salinas por la carretera que conduce a Cayey. Cuando el recurrente se encontraba próximo al garage notó un olor a quemado al frente del motor. Testificó que "no se notaba nada ni en el asiento ni en la caja." Aceleró la marcha y al llegar al puesto de gasolina el empleado le dijo que se alejara de las bombas al notar que salía fuego "por la parte posterior trasera inferior" del vehículo, por debajo. Dicho empleado testificó que "la guagua venía prendida por la parte de atrás . . . Por la parte izquierda trasera, por la parte de abajo."

El recurrente admitió que fumaba ocasionalmente pero no recordaba haber fumado al conducir la guagua. Admitió también la posibilidad de que una persona extraña hubiera intervenido con el vehículo mientras éste estaba estacionado en el club de Salinas y que no le pareció que se le hubiese caído un cigarrillo encendido en la parte posterior del vehículo.

Esa fue, en síntesis, toda la prueba que el recurrente ofreció al tribunal de instancia con excepción de un perito práctico que nunca vio el vehículo en cuestión y por lo tanto no tuvo la oportunidad de examinarlo. Declaró que un automóvil se puede quemar, o intencionalmente, o por un corto circuito que se ocasiona debido a instalaciones defectuosas de los alambres eléctricos; que los alambres eléctricos se colocan mal de fábrica y se pinchan entre la caja y el chasis;

que con el uso y movimiento del carro se gasta la protección o forro del cable que está hecho de material inflamable, se pela, ocurriendo el corto circuito que quema el forro de los alambres eléctricos originándose el fuego; que él ha tenido que corregir muchos defectos de fábrica en los cables eléctricos de carros nuevos, cables que vienen pinchados entre la caja y el chasis del carro; que el forro que protege el alambre constituye material inflamable; que por dentro del baúl de un carro van cables eléctricos y lo que le suceda a esos cables no se puede ver cuando están puestos los asientos; que la parte inflamable es la madera, el vinyl y el *foam rubber* de los asientos siendo el resto de metal; que el tanque de gasolina no explotó; que aunque los alambres no van a algún área de material inflamable, cuando ocurre un corto circuito se quema el alambre pues está cubierto con material inflamable y se quema todo el carro y "si coge el tanque explota"; que si un auto viene de fábrica con una instalación defectuosa de la cablería, los alambres se pinchan contra la caja y el chasis y entonces ocurre el corto circuito y por consiguiente el fuego, y que en su opinión eso fue lo que ocurrió en este caso; que el corto circuito puede ocurrir a los pocos días de usarse o puede tardar dos meses y medio como en este caso; que el corto circuito puede ser debido al uso del vehículo "y a carros nuevos también, todo depende del alambre . . . . Mayormente al uso"; que en este caso "Yo creo que es más defecto de fábrica."

No pudo afirmar el perito que el vehículo se quemó debido a un corto circuito. Testificó que "no puedo explicarle . . . detenidamente . . . qué es lo que ocasiona . . . que un corto circuito pueda quemar un carro."

Preguntado dicho perito si podía quemarse el vehículo en forma no intencional cuando una persona se queda con un cigarrillo en el asiento y lo tira sin darse cuenta, contestó que "en el momento que se tira un cigarrillo hay la intención de quemarlo"; que *pudo quemarse debido a un acto*

*negligente de acuerdo con los hechos que oyó declarar.*

Concluyó el tribunal de instancia que: "No se ha probado relación causal alguna entre el fuego que destruyó el automóvil después de haber sido usado por el demandante por espacio de dos meses y medio, y las esporádicas intervenciones que los empleados de la demandada tuvieren con el mismo a solicitud del propio actor . . . el demandante no probó en forma alguna defecto o vicio oculto en el vehículo. Tampoco probó que el fuego fuera ocasionado por defecto oculto alguno en el vehículo. Tampoco alegó y probó conocimiento o mala fe del vendedor. Dentro de las circunstancias concurrentes en el presente caso no nos inclinamos a resolver que por el mero hecho de que el vehículo era nuevo y se quemó ello establece una presunción de vicio oculto en el mismo que haga generar responsabilidad en la vendedora bajo las disposiciones del citado Art. 1377 del Código Civil en ausencia de prueba clara y suficiente que establezca dicho vicio oculto al tiempo de la venta."

Apunta el recurrente que el tribunal de instancia incidió al concluir que (1) la prueba es insuficiente para demostrar que el referido incendio se originó por vicios o defectos ocultos en el vehículo; y (2) el recurrente creyó haber fumado mientras conducía el vehículo a la estación de servicio. Apunta, además, que incidió (3) al no dar por probado que el incendio del vehículo ocurrió por causas internas del mismo.

En apoyo del primer y tercer apuntamiento arguye el recurrente que la prueba demuestra que el vehículo no fue quemado intencionalmente o por negligencia del recurrente o por accidente; que la prueba descartó la posibilidad de que el fuego ocurriera por causas externas al vehículo; que estableció una inferencia lógica y razonable de vicios ocultos en el vehículo; que es aplicable a este caso la doctrina de *res ipsa loquitur.*

En *Murcello v. H. I. Hettinger & Co.*, 92 D.P.R. 411, 431 (1965), dijimos que:

"Muy pocas cosas hay en los asuntos humanos y especialmente en litigios que envuelvan reclamación de daños, que puedan establecerse a tal grado de absoluta certeza, como para excluir la posibilidad, o aun alguna probabilidad, de que otra causa o razón haya podido ser la causa o razón verdadera de los daños, antes que la alegada por los demandantes. *Pero no puede permitirse que tal posibilidad o aun probabilidad pueda derrotar el derecho a recobrar, cuando el demandante ha presentado ante el jurado suficientes hechos y circunstancias alrededor del accidente, como para justificar* a un jurado razonable al concluir que la alegada cosa fue la causa principal y próxima y no es necesario excluir la posibilidad o aun otra probabilidad, de que otra causa o razón pueda haber sido la verdadera causa o razón de los daños, antes que la alegada por el reclamante."

■ En *Dent* v. *Hardware Mutual Casualty Co.*, 388 P.2d 89 (Idaho 1964), el tribunal dictaminó que cuando el daño ha sido ocasionado por una de dos causas y el demandado no es responsable por una de ellas, el demandante debe probar que el daño se debió a la causa que responsabiliza al demandado y el demandante no ha logrado establecer ese hecho cuando la prueba demuestra que tan probable es que el daño se debió a una causa como a la otra.

El caso de *Bass* v. *General Motors Corporation*, 447 S.W.2d 443 (Ct.Civ.App. Texas 1968), es muy parecido al que nos ocupa. En éste el automóvil nuevo comprado por el apelante al apelado sufrió daños con motivo de un fuego. Los cables eléctricos debajo del tablero de instrumentos estaban quemados. La parte más quemada estaba en y cerca del pedal de arranque y el generador. El fuego principalmente estaba confinado en el área de la rueda del guía y las luces de señales. Tres días antes del fuego, el apelante notó vacilantes las luces de la capota. Un día antes, la bocina comenzó a tocar por lo que la desconectó y no la volvió a conectar. El día del fuego estacionó el auto a las 6:45 de la mañana en determinada calle y a las 12:30, cuando se acercó al vehículo notó que los cristales estaban ahumados.

Al abrir una de las puertas notó gran cantidad de humo dentro del auto, indicativo de que estaba ardiendo. Corrió a los bomberos quienes apagaron el fuego. En su testimonio dijo que no dejaba de considerar la posibilidad de que alguien hubiera estado en el vehículo esa mañana. Al demandar por los daños resultantes al manufacturero y al vendedor del vehículo, alegó que la causa próxima del accidente fue una cablería defectuosa la cual no fue propiamente manufacturada e instalada para evitar un corto circuito y que el segundo fue negligente al no inspeccionar y probar el auto antes de entregarlo al apelante. En la alternativa invocó la doctrina de *res ipsa loquitur*. Concluyó el tribunal que no hubo prueba de que existiese un defecto en el sistema eléctrico cuando se entregó el auto al apelante; que para aplicar *res ipsa loquitur* el apelante tenía el peso de probar que existía un defecto que requería reparación que el vendedor no hizo y que tal omisión fue la causa próxima del accidente; que no hubo prueba de cablería defectuosa o de diseño defectuoso o de que algún defecto fuese la causa próxima del accidente.

■ En *Haas* v. *Buick Motors Div. of General Motors Corp.*, 156 N.E.2d 263 (App. Ct. Ill. 1959), los hechos fueron los siguientes: Luego de comprar auto nuevo, se inspeccionó, después de correr 500 millas, por el vendedor. Se le ajustó el pedal de aceleración. Mientras lo conducía la esposa del demandante por una avenida pública, cuando ya había corrido 1300 millas, notó que salía humo de debajo del panel de instrumentos. Paró. La llave de la ignición no giró. El panel se derritió por el fuego. El vehículo fue vendido por su valor restante (*salvage*). Se usó en forma normal. No se inspeccionó después del fuego para determinar si existía algún defecto en su manufactura. Hubo "Veredicto dirigido" en favor del manufacturero demandado, el cual fue confirmado. Dijo el tribunal:

"El mero hecho de ocurrir una circunstancia que causa daño a una propiedad no autoriza una presunción o inferencia de que el demandado es responsable . . . . El mero hecho que un fuego evidentemente ocurrió en este caso, que causó daño a una propiedad, no autoriza ninguna presunción o inferencia de que el demandado es responsable,—el peso recae sobre el demandante de probar, entre otras cosas que existió un defecto material en los materiales o en la labor de manufactura."

*Shramek* v. *General Motors Corp., Chevrolet M. Div.*, 216 N.E. 244, 248 (App. Ct. Ill. 1966) ; *O. S. Stapley Company* v. *Miller*, 447 P.2d 248, 252 (Ariz. 1968) ; *Comstock* v. *General Motors Corp.*, 99 N.W.2d 627 (Mich. 1959) ; 78 A.L.R.2d 460, 497–504, 505–508.

En *Caruthe* v. *Mariani*, 458 P.2d 371 (Ct. App. Ala. 1969), se demandó al dueño, al vendedor y al manufacturero de un automóvil por daños causados al chocarlo contra la parte posterior de otro luego de sufrir el primero una falla de los frenos causados por rotura de un tubo de acero que contenía líquido hidráulico. Esta rotura se debió a que el tubo rozaba con el cuerpo del vehículo. El veredicto a favor del manufacturero fue revocado porque "No es necesario que el demandante elimine todas las posibilidades desfavorables. Sostiene el peso de la prueba si considerando la evidencia más favorable en apoyo de la posición del demandante, es más probable que existe base para el demandante recobrar . . . . La cuestión, como lo vemos, es si personas razonables podrían ser persuadidas por la prueba que es más probable que General Motors causó que este accidente ocurriese debido a alguna negligencia u omisión de su parte. Creemos que podrían."

En acción basada en garantía implícita, la doctrina de *res ipsa loquitur* no tiene aplicación hasta que haya prueba de los elementos necesarios para que entre en juego, que la inferencia que surge de la regla no suple los hechos básicos y su aplicación a determinados hechos no puede ba-

sarse en especulaciones. *Wawak* v. *Stewart*, 449 S.W.2d 922, 930, 931 (Ark. 1970).

En *Mazzietelle* v. *Belleville Nutley Buick Co.*, 134 A.2d 820, 823 (N.J.A.Div. 1957), el fuego que quemó el vehículo se inició debajo del tablero de instrumentos luego de su dueño conducirlo fuera del aparcamiento del establecimiento donde trabajaba y dejarlo junto a una acera mientras volvía a pie a cerrar los portones. Anteriormente el vehículo había adolecido de defectos de naturaleza eléctrica en esa área que el demandado vendedor del vehículo había tratado varias veces de corregir. Bajo esas condiciones la inferencia de probabilidad era razonable de que la destrucción del vehículo provino de falta de inspección y reparación por parte del demandado.

En *Hepp* v. *Quickel Auto & Supply Co.*, 25 P.2d 197 (N.M. 1933), se trataba de una acción en contra de un establecimiento de reparación de automóviles por la muerte de una persona con motivo de un accidente ocasionado al trabarse una rueda del vehículo en que iba el occiso, suceso que ocurrió poco después que el vehículo había sido reparado y probado en el referido establecimiento. La reparación incluyó el desarmar y volver a armar el mecanismo de frenar y el reajuste de los frenos. El tribunal concluyó que la doctrina de *res ipsa loquitur* no era aplicable pues los hechos y circunstancias del caso señalaban hacia la negligencia del demandado hasta justificar una inferencia de que la hubo; que aunque la evidencia no indicaba con certeza si se hizo una instalación o una lubricación defectuosa ni cuáles de los defectos causó la fricción y trabazón subsiguiente de la rueda, en el ámbito de las probabilidades, la prueba limitó el campo tanto que estaba dentro de la esfera de una legítima inferencia el concluir que la lesión resultó de una u otra causa con respecto a la cual el demandado estaba obligado para con el lesionado.

Igualmente en *Sam White Oldsmobile Co.* v. *Jones Apothecary, Inc.*, 337 S.W.2d 834 (Ct.Civ.App. Texas 1960), se responsabilizó al apelante, un traficante de automóviles, por la pérdida por fuego del vehículo del apelado que fue objeto de varias reparaciones en su cablería eléctrica inclusive el encendedor de cigarrillos que se trababa y se calentaba al rojo vivo. El fuego comenzó en la cablería debajo del panel de instrumentos al arrancar el motor cuando el Sr. Jones regresó al mismo, luego de haberlo estacionado con sus ventanas cerradas y puertas cerradas con llave. Dijo el tribunal que como el vehículo estaba cerrado con llave, no se demostró que durante el tiempo que Jones se ausentó del mismo alguien pudo trastearlo; que la causa próxima puede presumirse y puede establecerse por evidencia circunstancial sustancial para sostener el peso impuesto al apelado de probar que existía un defecto que requería reparación, la cual no se hizo, y que tal omisión constituyó la causa próxima del daño.

En *Mendoza* v. *Cervecería Corona, Inc.*, 97 D.P.R. 499, 512 (1969), dijimos que ". . . si bien el consumidor no tiene que establecer directamente la negligencia del fabricante, el fabricante no es asegurador de todos los daños que puedan ocasionar sus productos . . . . Si el daño no es atribuible a un defecto del producto, no hay base para aplicar la norma de responsabilidad absoluta."

En el caso ante nos, el recurrente admitió la posibilidad de que el fuego se debiese a la negligencia de un extraño. El perito del recurrente nunca vio ni examinó el vehículo destruido. Testificó, en efecto, sobre la posibilidad de que la cablería hubiese sido instalada defectuosamente en fábrica y que esto pudiera haber dado lugar a un corto circuito y por resultado a un fuego en el vehículo. Pero el testimonio de este testigo no relacionó en forma alguna la inspección a las mil millas, la instalación de un radio, el cambio del filtro de aceite, el arreglo del velocímetro, del silenciador y del

interruptor de las luces interiores y el ajuste del motor, actos realizados por el recurrido en el vehículo, con el fuego que se originó en la parte baja posterior del automóvil.

En síntesis, de la prueba aparece que el fuego pudo ser ocasionado por un corto circuito ocasionado por el uso o por la instalación eléctrica defectuosa en fábrica en la parte posterior del vehículo o por un acto negligente de alguien. No hubo indicio alguno de tal instalación defectuosa con anterioridad al fuego. El propio perito admitió que, de los testimonios que oyó existía la posibilidad de que la causa del fuego fue un acto negligente de alguien, o que fue ocasionado por el uso. Cuando el vehículo fue conducido a la estación de gasolina estaba funcionando bien en cuanto a batería, luces y marcador de gasolina. Contrario a *Bass*, supra, no hubo prueba que específicamente indicase la existencia de defecto eléctrico alguno en la parte posterior del vehículo antes del fuego ni de que hubiese ocurrido alguna novedad al vehículo que hubiese justificado concluir que el recurrido fue negligente en no descubrir y corregir a tiempo tal instalación eléctrica.

Lo que sí demuestra la prueba es que el fuego se debió a una de varias posibles causas pero no demostró cuál fue con razonable certeza. La prueba no "limitó el campo tanto que estaba dentro de la esfera de una legítima inferencia el concluir" que la causa del fuego era atribuible al recurrido o de que el fuego se debiese a omisión alguna del recurrido. Si bien es cierto que el perito testificó que, en su opinión, el fuego se debió a un corto circuito ocasionado por una instalación defectuosa de la cablería en la fábrica, no es menos cierto que no pudo precisar con razonable certeza los hechos que justificaban tal conclusión. Por el contrario, admitió que el corto circuito pudo haber sido ocasionado por el uso así como también admitió que, según la prueba, el fuego pudo haber sido ocasionado por un acto negligente de alguien.

*En vista de lo expuesto, debe confirmarse la sentencia dictada en este caso por el tribunal de instancia.*

El Juez Asociado Señor Pérez Pimentel concurre en el resultado.