William R. BASS, Appellant,

v.

**GENERAL MOTORS CORPORATION et al.,**
Appellees.

No. 16935.

Court of Civil Appeals of Texas.

Fort Worth.

June 14, 1968.

Rehearing Denied July 19, 1968.

Bryan & Amidei, and Maurice Amidei, Fort Worth, for appellant.

Stone, Tilley, Parker, Snakard, Law & Brown, and James B. Barlow and Boe W. Martin, Fort Worth, for appellee, General Motors Corporation.

Brown, Day & Crowley, and Paul Peebles, Fort Worth, for appellee, Meador Olds, Inc.

## OPINION

RENFRO, Justice.

Plaintiff Bass alleged that on November 19, 1964, he bought a new 1965 Oldsmobile Dynamic "88" Holiday Sedan from Meador Oldsmobile, Inc., authorized Oldsmobile dealer for General Motors Corporation, for the purchase price of $4,434.20.

Bass alleged that defendant General Motors expressly warranted in writing that the automobile was free from defects in material and workmanship, and impliedly warranted that the automobile was properly manufactured, assembled, tested and inspected, and was fit for the purposes for which it was sold.

Plaintiff alleged that on June 25, 1965, after being subjected to normal use and service by plaintiff, the automobile caught fire as a direct and proximate result of defective wiring and defective turn indicators which were not properly manufactured, assembled, tested and inspected; that the wiring was not securely fastened or insulated to prevent shorting; that the loose installation and insulation by General Motors was negligence.

It was alleged that defendant Meador Oldsmobile, Inc., was negligent in failing to properly inspect and test the automobile prior to delivery of same to plaintiff.

In the alternative, plaintiff plead res ipsa loquitur.

Damages were prayed for in the sum of $1,727.27.

At the close of plaintiff's case, the defendants moved for instructed verdict.

The motions were granted and judgment entered for both defendants.

Plaintiff seeks reversal on the grounds, (1) pleadings and proof raised issue of fact as to negligence of General Motors in manufacturing the automobile with defective wiring and turn indicator, insufficient insulation on wiring, loose installation and insulation of turn indicator; (2) proof raised issue of fact as to existence of an express warranty by General Motors; (3) proof raised issue of fact as to implied warranty by General Motors; (4) proof raised issue of fact as to negligence of Meador Oldsmobile, Inc., in failing to properly inspect and test; (5) there was sufficient evidence as to an inference of negligence to submit issue under res ipsa loquitur; and (6) court erred in refusing to admit opinion testimony of witness Wallace.

Defendant General Motors counters that the judgment should be affirmed because, (1) plaintiff merely proved occurrence of a fire and failed to prove any defect existed at time of delivery to plaintiff; (2) plaintiff introduced no evidence of breach of an express warranty; (3) plaintiff failed to show compliance with any of the terms of any express warranty; (4) existence of a written warranty precluded recovery upon implied warranty; (5) plaintiff failed to show existence or breach of any implied warranty; (6) res ipsa loquitur not applicable under evidence introduced by plaintiff; and (7) court did not err in refusing to qualify witness Wallace as an expert witness.

Defendant Meador Olds argues that plaintiff failed to introduce any evidence with reference to inspection and testing by Meador.

According to plaintiff's testimony, he: in November, 1964, bought from Meador (plaintiff sued Meador Oldsmobile, Inc.; answer was filed by Meador Olds; judgment was rendered for Meador Olds; neither party makes a point of the discrepancy in names; for convenience we will refer to the dealer as Meador) an Oldsmobile known as Dynamic "88", Holiday type, for $4,435.00. Two or three days preceding June 25, 1965, he noticed a flickering

of the dome lights. On June 24 the horn of the car started "blowing." He disconnected the horn under the hood by the radiator. He never re-connected the horn. On the 25th of June he parked the car on Green Street near Texas Christian University, about 6:45 A.M. As he approached the car between 12:30 and 1:00 the same day, he noted the glasses were "smoked" and a dark "glaze" was over the windows. Upon opening the door "fumes and smoke" hit him in the face. The left turn signal indicator was hanging straight down. There was no flame, but there was sufficient smoke to indicate the car was on fire. He does not know whether any one was in the car between 6:45 and 12:30. He went to a fire station two blocks away, reported the fire, returned to the car with the fire truck. The firemen extinguished the fire. A Meador's wrecker took the car to Meador's place of business. Plaintiff introduced in evidence a 1965 Oldsmobile owner Protection Plan which contains a "New Vehicle Warranty." Said warranty was delivered to him by Meador when, subsequent to the damage to the original car, he bought a Delta 88. He lost the warranty he received when he bought the Dynamic. He "assumes" the warranties are the same. He "thinks" he read the original warranty.

At no time did he make any complaint to Meador about the electrical system. He never had any trouble with the turn indicators. The car operated normally after he disconnected the horn. He may have glanced at the warranty given him when he bought the Dynamic, he did not read it thoroughly. He does not remember glancing at it at all before he took delivery of the Dynamic.

Captain Seals of the Fort Worth Fire Department, who went to the scene of the fire, testified: the fire was an electrical fire. There was a smoldering fire. The wires were charred evenly from one end to the other. In his opinion a short circuit caused heat to be generated inside the wire, burning the insulation from the wire. There were charred wires under the dash where current had passed through the fire wall. The most severely burned part was "on the left bank of the car in and around the starter and generator where the battery cable ran and where the ignition wires came to the coil. * * * Under the hood kas where the fire was" though "—there were charred wires under the dash."

The witness Wallace, dealer in used auto parts, testified: he inspected plaintiff's car after the fire. The "main fire was confined to the steering wheel area, around the signal lights, or the wiring mostly up in the upper part of the steering assembly." The turn indicator was completely burned. The front seat assembly was burned and the floor-front rugs were burned. Some of the melted turn indicator fell on the front seat.

The only allegation relating to Meador was alleged negligence in failing to properly inspect and test the automobile, and, in the alternative, res ipsa loquitur.

The only evidence in the record concerning Meador is that plaintiff bought the car from Meador, and, after the fire, Meador towed the car to its place of business. The record is void of any evidence as to whether Meador did or did not inspect and test. Certainly no negligence, as alleged, was proved against Meador.

■ We also overruled plaintiff's contention he was entitled to submit the case as to Meador on res ipsa loquitur. The Supreme Court, in Hankins v. Coca Cola Bottling Co., 151 Tex. 303, 249 S.W.2d 1008 (1952), held: "A person injured by a resultant explosion of a coca cola bottle is entitled to rely on the res ipsa loquitur doctrine even though the bottle has left the bottler's control, but, in such cases, it is necessary for the plaintiff to establish by a preponderance of the evidence that the instrumentality * * * was not damaged by some intervening force between the time of its last handling by the defendant and the final occurrence which causes the damage."

The Commission of Appeals in an opinion adopted by the Supreme Court, Davis v. Castile, 257 S.W. 870 (1924), held: "* * * where the evidence shows that the accident may have happened as the result of one of two or more causes, and it is not more reasonably probable that it was due to the negligence of the defendant than to any other cause, the rule of res ipsa loquitur does not apply."

Plaintiff testified he pulled the electric wires loose from the horn on the day preceding the fire, and did nothing to repair or safeguard the car from the thereby released and loosened live wires.

Incidentally, he did not rule out the possibility of some one else being in the car on the morning of the fire. Plaintiff failed to bring the case, as to Meador, within the application of the res ipsa loquitur doctrine. See Tuscany v. United States Standard Products Co., 243 S.W.2d 207 (Tex.Civ.App., 1951, no writ hist.); Robertson v. Southwestern Bell Telephone Co., 403 S.W.2d 459 (Tex.Civ.App., 1966, no writ hist.); 25 Tex.Jur.2d p. 361, § 22.

█ In addition, the evidence fails to show that a defect or defects existed in the electrical system when the car was delivered to plaintiff. In order to apply res ipsa loquitur to Meador the burden was on plaintiff to show that some defect existed, making a repair necessary, that Meador failed to make the repair, and that such failure was a proximate cause of the fire. Sam White Oldsmobile Co. v. Jones Apothecary, Inc., 337 S.W.2d 834 (Tex.Civ.App., 1960, ref., n. r. e.).

In our opinion plaintiff fell short of making such showing.

█ The plaintiff's point that the court erred in refusing to allow the witness Wallace to give his opinion as to the cause of the fire is overruled. The trial court has wide discretion in rejecting opinion testimony and its action will not be reviewed except for abuse. Urquhart v. Barnes, 335 S.W.2d 666 (Tex.Civ.App., 1960, no writ hist.), and whether or not a person offered as an expert possesses the required qualifications is also within the discretion of the trial judge. His ruling will not be disturbed in the absence of a clear showing of abuse. Rhinetubes, Inc., v. Norddeutscher Lloyd, 335 S.W.2d 269 (Tex.Civ.App., 1960, ref., n. r. e.); Reagan v. Sinclair Ref. Co., 319 F.2d 363 (5th Cir., 1963).

█ Whether Wallace was called upon to testify as an expert, or merely to give his opinion as a used car dealer, is immaterial for plaintiff has failed to show abuse of discretion on the part of the trial court in ruling on the excluded question and answer.

Since plaintiff failed, by competent evidence of probative force, to raise a fact issue upon which liability could be fixed on Meador, the court did not err in instructing a verdict for Meador.

█ In his action against General Motors plaintiff relies on the doctrine that holds a manufacturer liable for the proximate results of its negligence in manufacturing its products, citing Mooring v. Fram Corporation, Tex.Civ.App., 420 S.W.2d 462; Brown v. Howard, Tex.Civ.App., 285 S.W.2d 752, and cases of like import. Specifically he quotes and relies on the following language from Mooring v. Fram Corporation, supra, "* * * a manufacturer of an article which is inherently or imminently dangerous, or becomes so when applied to its intended use in the usual and customary manner, is liable to one, who, without fault suffers damage to his person or property which is the natural and proximate result of negligence in the manufacture of the article, if the damage might have been reasonably anticipated. The rule is held to be applicable irrespective of privity or any contractual relationship between the parties."

Under the doctrine of strict liability, which plaintiff apparently invoked, the plaintiff need not prove privity of contract,

and he is relieved from the burden of proving the manufacturer was negligent.

The plaintiff, however, had the burden of proving that the electrical system or some part of it was defective; the defect existed at the time the automobile left the hands of General Motors; because of the defect the automobile was unreasonably dangerous or not reasonably safe; that the defect was the proximate cause of the fire; and that the automobile was damaged.

In our opinion plaintiff proved nothing more than the fact that the automobile was damaged as a result of an electrical fire.

There is no evidence in the record that the wiring was defective, that it was defective when it left General Motors, that the defect, if any, rendered the automobile unreasonably dangerous, or that any defect was the proximate cause of the fire, nor is there any evidence of faulty design. Proximate cause is not to be presumed. It must be proved by evidence.

Thus plaintiff failed in his effort to hold General Motors liable under strict liability.

Plaintiff received an express warranty when he bought the car in question. He did not plead its terms. He merely glanced at it after he accepted delivery of the car. He could not testify as to its provisions. Having lost or misplaced it, he of course could not introduce it in evidence.

He did introduce an express warranty given him when he bought another car from Meador after the damage occurred to the first car. He merely assumed the original warranty and the warranty given him with the second car were the same.

For the purpose of this discussion we will assume the two warranties were the same.

All that the evidence shows is the fact that a fire occurred. Plaintiff concedes that there is no evidence that the fire occurred because of any of the alleged defects, but argues that the evidence shows in all probability the fire resulted from alleged defects.

Neither court nor jury could infer that the fire that did the damage was caused by a defect in the electrical system because the proof failed to show any defects existed in the electrical system. Jack Roach-Bissonnet, Inc., v. Puskar, 417 S.W.2d 262 (Tex.Sup., 1967).

We call attention to the language in the New Vehicle Warranty which plaintiff received when he bought a second car from Meador: "Oldsmobile Division's Obligation under this warranty being limited to repairing or replacing at its option any part or parts thereof which shall, within twenty-four (24) months after delivery of such vehicle or chassis to the original retail purchaser or before such vehicle or chassis has been driven twenty-four thousand (24,000) miles, whichever event shall first occur, be returned to an authorized Oldsmobile Dealer at such Dealer's place of business and which examination shall disclose to Manufacturer's satisfaction to have been thus defective. The repair or replacement of defective parts under this warranty will be made by such Dealer without charge for labor."

There is no evidence in the record that the car had been driven less than 24,000 miles when the fire occurred. There is no evidence that plaintiff ever requested General Motors or Meador to repair, inspect or perform any service on the car or its parts, either before or after the fire.

Applicable here is the language found in Haas v. Buick Motor Division, 20 Ill.App. 2d 448, 156 N.E.2d 263 (2nd Dist., 2nd Div., 1959), towit: "There is simply no evidence in the record to sustain the alleged breach of the written express warranty, * * * ." and we therefore hold that plaintiff failed to prove a cause of action under express warranty. In support of our holding see Fetzer v. Haralson, 147 S.W. 290 (Tex.Civ.App., 1912, ref.); London v. Curlee, 336 S.W.2d 836 (Tex.Civ.App., 1960, no writ hist.); Swift v. Roach, 266

S.W. 846 (Tex.Civ.App., 1924, no writ hist.).

There being no evidence to support a finding that the fire was caused by defects either in workmanship, design or material existing at the time the automobile was delivered to plaintiff, this disposes of his alleged right to recover upon the theory of an implied warranty.

For the reasons stated in discussing plaintiff's claim of res ipsa loquitur against Meador, we hold that he did not make out a res ipsa loquitur case against General Motors.

Affirmed.