PEDRO FEDERICO ORTIZ, Plaintiff and Appellant, *v.* FLEMING MOTORS, INC., Defendant and Appellee.

No. R-68-122.　　Decided March 2, 1971.

*Efraín Goglas Carvajal* for appellant. *Carlos E. Colón* for appellee.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

We should affirm the ruling of the trial court dismissing the complaint in this case which sought to hold appellee liable for the loss of a motor vehicle bought by appellant from appellee and which was destroyed by a fire that originated in the back part of the vehicle while appellant was driving close to a gasoline service station.

Appellant's evidence, which was not rebutted by appellee, established the following:

On March 15, 1967, appellant bought from appellee a new Vauxhall automobile, model Victor FCW/SW 1967, for the amount of $3,680.

The mechanics employed by appellee worked on the automobile in April 1967 for the one-thousand-miles inspection, to install a radio, change the oil filter, connect the speedometer, and to prevent the stopping of the motor while the vehicle was running in low gear. On the following May 20 they again worked to fix up the automobile's interior light which remained lit even when the doors of the same were closed; they also repaired the muffler.

Nobody else worked on the vehicle and it was never involved in any accident.

The automobile received a normal use by appellant who used it for personal purposes and purposes in connection with his drugstore in Salinas. He only travelled in it from Salinas to Ponce and to Guayama.

On May 27, 1967, around 1:00 o'clock in the morning appellant, after attending a meeting at a club in the town of Salinas, went towards Ward Coquí of Salinas, and immediately returned to the town. He noticed on the way that the gasoline gauge indicated that it needed gasoline. As the gas stations in the town were closed, he went towards a gasoline

station at Quebrada Yegua which is situated five kilometers from Salinas on the highway which leads to Cayey. When appellant was close to the gasoline station he noticed a smell of fire in front of the motor. He testified that "nothing could be noticed either in the seat or in the housing." He accelerated and when he reached the gasoline station the employee told him to move away from the pumps when he noticed that fire was coming out "from the rear lower part" of the vehicle, from underneath. Said employee testified that "the rear part of the wagon was on fire. . . . On the rear left part, underneath."

Appellant admitted that he smoked occasionally but he did not remember having smoked while driving the station wagon. He admitted also the possibility that an extraneous person could have worked on the vehicle while the same was parked at the Salinas club and that it was not likely that a lit cigarette had dropped from his hand to the rear part of the vehicle.

That was, in synthesis, all the evidence which appellant offered to the trial court with the exception of an expert who never saw the vehicle in question and, therefore, did not have the opportunity to examine it. He testified that an automobile may catch fire, intentionally or as a result of a short circuit which is caused on account of defective installation of the electric wires; that the electric wires are placed wrongly in the factory and are wedged between the housing and the chassis; that with the use and movement of the car the protection or lining of the cable which is made of inflammable material wears out, it peels off, a short circuit occurring which burns the lining of the electric wires originating the fire; that he has had to correct many factory defects in electric cables of new cars, cables which become wedged between the housing and the chassis of the car; that the lining which protects the wire constitutes inflammable material; that inside the trunk of a car there are electric

cables and what happens to those cables cannot be seen when the seats are in place; that the inflammable part is the wood, vinyl and foam rubber of the seats while the rest is metal; that the gasoline tank did not explode; that although the wires do not reach any area of inflammable material; when a short circuit occurs the wire is burnt since it is covered with inflammable material, and the entire car may catch fire and "if it reaches the tank it explodes"; that if a car comes with a defective installation of cables from the factory the wires are pinched between the housing and the chassis and then the short circuit occurs and consequently the fire, and that in his opinion that was what happened in this case; that the short circuit may occur a few days after using it or it can take two months and a half as in this case; that a short circuit can also be caused by the use of the vehicle "and to new cars too, it all depends on the wire. . . . Chiefly to the use"; that in this case "I believe that it is rather a factory defect."

The expert could not assert that the vehicle was burnt as a result of a short circuit. He testified that "I cannot explain to you . . . in detail . . . what causes . . . for a short circuit to burn a car."

When said expert was asked whether the vehicle could be set on fire unintentionally when a person stays in the seat with a cigarette and throws it without realizing it, he answered that "at the moment that a cigarette is thrown there is intention of burning it"; that *it could have burned as a result of a negligent act according to the facts which he heard testified.*

The trial court concluded that: "No causal relationship has been established between the fire which destroyed the automobile after having been used by plaintiff for two and a half months, and the sporadic interventions which defendant's employees had with the same at the request of the actor himself . . . plaintiff did not establish in any manner whatsoever the existence of hidden defect or flaw in the vehicle. Neither

did he prove that the fire was caused by any hidden defect in the vehicle. He did not allege and prove either, knowledge or bad faith on the vendor's part. Within the attendant circumstances in the instant case we are not inclined to decide that for the mere fact that the vehicle was new and was burned that presumption of hidden defect on the same is established which may generate the vendor's liability under the provisions of the cited § 1377 of the Civil Code in the absence of clear and sufficient evidence to establish said hidden defect at the time of the sale."

Appellant assigns that the trial court erred in concluding that (1) the evidence is not sufficient to establish that said fire was caused by hidden defects or flaws in the vehicle; and (2) appellant thought he had smoked while driving the vehicle towards the gas station. He also assigns, that it erred (3) in not considering as proven that the fire of the vehicle occurred as a result of internal causes of the same.

In support of the first and third assignments appellant argues that the evidence establishes that the vehicle was not burned intentionally or as a result of appellant's negligence or by accident; that the evidence ruled out the possibility that the fire occurred on account of external causes to the vehicle; that it established a logical and reasonable inference of hidden defects in the vehicle; that the doctrine of *res ipsa loquitur* is applicable to this case.

In *Murcello* v. *H. I. Hettinger & Co.*, 92 P.R.R. 398, 417 (1965), we said that:

" 'There are very few things in human affairs, and especially in litigation involving damages, that can be established to such an absolute certainty as to exclude the possibility, or even some probability, that another cause or reason may have been the true cause or reason for the damage rather than the one alleged by the plaintiff. *But such possibility, or even probability, is not to be allowed to defeat the right of recovery, where the plaintiff has presented to the jury sufficient facts and circumstances surrounding the occurrence as to justify* a reasonable juror in

concluding that the thing charged was the prime and moving cause,' and 'it is not necessary to exclude the possibility, or even some probability, that another cause or reason may have been the true cause or reason for the damage, rather than the one alleged by a claimant.' "

In *Dent* v. *Hardware Mutual Casualty Co.*, 388 P.2d 89 (Idaho 1964), the court ruled that when the damages claimed were occasioned by one of two causes and defendant is not responsible for one of them, plaintiff must show that the damages were produced by the cause for which defendant is responsible and plaintiff fails to do so if the evidence establishes that it is just as probable that they were caused by the one as by the other.

The case of *Bass* v. *General Motors Corporation*, 447 S.W.2d 443 (Ct. Civ. App. Texas 1968), is very similar to the one at bar. Therein the new automobile bought by appellant from appellee sustained damages as a result of a fire. The electric wires under the dashboard were burnt. The most severely burned part was in and around the starter and generator. The fire was principally confined to the steering wheel area and to the signal lights. Three days prior to the fire, appellant noticed a flickering of the dome lights. A day before, the horn of the car started blowing for which reason he disconnected it and did not reconnect it. On the day of the fire he parked the car at 6:45 a.m. on a certain street and at 12:30 when he approached the vehicle he noted that the glasses were smoked. Upon opening one of the doors he noticed a great amount of smoke inside the car, indicating that it was on fire. He ran towards the firemen who extinguished the fire. In his testimony he stated that he did not rule out the possibility of some one else being in the car that morning. In suing the manufacturer and the seller of the automobile for the resulting damages, he alleged that the proximate cause of the accident was defective wiring which was not properly manufactured and assembled to prevent a

shorting, and that the latter was negligent in failing to inspect and test the automobile prior to delivery of same to appellant. In the alternative he invoked the doctrine of *res ipsa loquitur*. The trial court concluded that the evidence failed to show that a defect existed in the electrical system when the automobile was delivered to appellant; that in order to apply *res ipsa loquitur* the burden was on appellant to show that a defect existed making a repair necessary which the seller failed to make and that such failure was the proximate cause of the accident; that there was no evidence of defective wiring or faulty design or that any defect was the proximate cause of the fire.

■ In *Haas* v. *Buick Motor Division of General Motors Corp.*, 156 N.E.2d 263 (App. Ct. Ill. 1959), the facts were the following: After a new automobile was purchased it was inspected by the dealer after having been driven 500 miles. The accelerator pedal linkage was adjusted. While plaintiff's wife was driving it on a public highway, when it had already been driven 1,300 miles, she noticed smoke coming from beneath the dashboard. She stopped. The ignition key did not turn. The dashboard was melted by the fire. The vehicle was sold as salvage. It was used in a normal way. It was not inspected after the fire to determine whether or not there was any defect in its workmanship. A "verdict was directed" in favor of the defendant manufacturer, which was affirmed. The court said:

"The mere fact that an occurrence resulting in damage to property has happened does not authorize any presumption or inference that the defendant was at fault. . . . The mere fact that a fire evidently occurred here, resulting in damage to the property, does not authorize any presumption or inference that the defendant was responsible therefor,—the burden was on the plaintiff to prove, among other things, that there was some material defect in materials or workmanship."

*Shramek* v. *General Motors Corp., Chevrolet M. Div.*, 216 N.E. 244, 248 (App. Ct. Ill. 1966); *O. S. Stapley Company* v. *Miller*, 447 P.2d 248, 252 (Ariz. 1968); *Comstock v. General Motors Corp.*, 99 N.W.2d 627 (Mich. 1959); 78 A.L.R.2d 460, 497–504, 505–508.

In *Caruth* v. *Mariani*, 458 P.2d 371 (Ct. App. Ariz. 1969), action was brought against owners, retailer, and manufacturer of an automobile for injuries sustained when it struck the rear-end of another automobile after the first sustained brake failure caused by the rupture of a steel tube containing hydraulic fluid. This rupture was due to the tube rubbing on the body of the vehicle. The verdict in favor of the manufacturer was reversed because "It is not necessary that the plaintiff eliminate all unfavorable possibilities; the plaintiff's burden of proof is carried, if, taking the evidence most favorably for the plaintiff's position, it is more probable than not that there is a basis for recovery . . . . The question as we see it here is whether reasonable persons could be persuaded by the evidence that it is more probable than not that General Motors caused this accident to happen through some neglect or oversight on its part. We believe that they could."

■ In an action grounded on implied guarantee, the doctrine of *res ipsa loquitur* does not apply unless there is proof of the elements necessary to bring it into play, that the inference arising from the rule does not supply the foundation facts and that its application to a particular set of facts cannot be based upon speculations. *Wawak* v. *Stewart*, 449 S.W.2d 922, 930, 931 (Ark. 1970).

In *Mazzietelle* v. *Belleville Nutley Buick Co.*, 134 A.2d 820, 823 (N.J.A. Div. 1957), the fire which burned the vehicle began underneath the dashboard after its owner drove it out of the parking area at his place of employment and parked it at the curb, while he returned to close the gates. Previously the vehicle had defects electrical in nature in that area which the defendant dealer of the vehicle had tried to

repair several times. Under those circumstances the inference of probability that the destruction of the vehicle stemmed from lack of inspection and repair on defendant's part was reasonable.

*Hepp* v. *Quickel Auto & Supply Co.*, 25 P.2d 197 (N.M. 1933), dealt with an action against an automobile repair establishment for the death of a person as a result of an accident caused by the locking of a wheel of the vehicle where the deceased was traveling, event which occurred shortly after the vehicle had been repaired and tested in said establishment. The repair included the tearing down of the brake assembly and its restoration and the readjustment of the brakes. The trial court concluded that the doctrine of *res ipsa loquitur* was not applicable as the facts and circumstances of the case point to negligence on the part of defendant to warrant an inference thereof; that although the evidence did not indicate with certainty whether a faulty installation or lubrication was done nor which of the defects caused the friction and consequent locking of the wheel, in the realm of probabilities, the evidence so narrows the field that it was within the sphere of legitimate inference to conclude that the injury resulted from one or the other of the causes in respect of which there was a duty owing from defendant to the injured party.

Likewise in *Sam White Oldsmobile Co.* v. *Jones Apothecary, Inc.*, 337 S.W.2d 834 (Ct. Civ. App. Texas 1960), appellant, an automobile dealer, was held liable for the loss by fire of appellee's vehicle which was object of several repairs in its electrical wiring including the cigarette lighter which stuck and became red hot. The fire broke out in the wiring under the dashboard or panel upon starting the motor when Mr. Jones returned to the same, after leaving it parked with its windows closed and the doors locked. The trial court said that as the vehicle was locked it was not established that during the time that Jones was away from the same someone could

have tampered with it; that the proximate cause may be presumed and established by strong circumstantial evidence to support the burden imposed on appellee of proving that there existed a defect which required repair which was not done, and that such omission constituted the proximate cause of the damage.

In *Mendoza* v. *Cervecería Corona, Inc.*, 97 P.R.R. 487, 499 (1969), we said that ". . . although the consumer does not have to establish directly the manufacturer's negligence, the manufacturer is not the insurer of every damage his products may cause. . . . If the damage is not attributable to a defect of the product, there is no ground for applying the strict liability rule."

■ In the instant case, appellant admitted the possibility that the fire was due to another's negligence. Appellant's expert never saw or examined the destroyed vehicle. He testified, in effect, about the possibility that the wiring could have been defectively installed in the factory and that this could have given rise to a shorting, and as a result, to a fire in the vehicle. But this witness' testimony did not connect in any manner whatsoever the one-thousand-mile inspection, the installation of a radio, filter change, a repair of the speedometer, the muffler, and the interior light switch, and adjustment of the motor, acts performed by appellee on the vehicle, with the fire that originated in the lower back part of the automobile.

In synthesis, it appears from the evidence that the fire could have been caused by a shorting caused by use or by the defective electric installation in the factory in the back part of the vehicle or by someone's negligent act. There was no indication of such defective installation before the fire. The expert himself admitted, that from the testimonies he heard, the possibility existed that the cause of the fire was someone's negligent act, or that it was caused by use. When the vehicle was driven to the gasoline station it was in good working con-

dition as to the battery, lights, and gasoline gauge. Contrary to *Bass, supra,* there was no evidence to indicate specifically the existence of any electric defect in the back part of the vehicle before the fire nor that any event had occurred to the vehicle to warrant the conclusion that appellee was negligent in not discovering and correcting timely such electric installation.

■ What the evidence does show is that the fire was caused by one of several possible causes but it did not establish which with reasonable certainty. The evidence did not "so narrows the field that it was within the sphere of legitimate inference to conclude" that the cause of the fire was attributable to appellee or that the fire was due to any omission on appellee's part. Although it is true that the expert testified that, in his opinion, the fire was due to a shorting occasioned by a defective installation of the wiring at the factory, it is no less true that he could not specify with reasonable certainty the facts which justified such conclusion. On the contrary, he admitted that the shorting could have been caused by the use and also admitted that, according to the evidence, the fire could have been caused by someone's negligent act.

In view of the foregoing, the judgment rendered in this case by the trial court should be affirmed.

Mr. Justice Pérez Pimentel concurs in the result.