GARY E. MILLER *v.* STATE OF ARKANSAS

5649                                    474 S.W. 2d 112

Opinion delivered November 29, 1971
[Rehearing denied January 10, 1972.]

*Lloyd C. Burrow,* for appellant.

Ray Thornton, Attorney General; Fred H. Harrison, Asst. Atty. Gen., for appellee.

J. Fred Jones, Justice. On the night of April 3, 1971, an automobile disappeared from its parking space at a cafe near Springdale, in Benton County, Arkansas. It was later found abandoned near Seligman, Missouri. One Peter Pion was questioned by police officers and he implicated the appellant Miller in the theft of the automobile. Miller was taken into custody and questioned by the police officers. He signed a written statement admitting his part in the theft of the automobile. Miller was charged with the crime of grand larceny in the theft of the automobile and was tried before a jury in the Benton County Circuit Court. He did not testify at his trial but the statement he gave to the police officers was introduced into evidence by the state. Miller was convicted and sentenced to five years in the Arkansas Penitentiary.

In anticipation that Miller's statement would be offered in evidence, his court appointed attorney filed a motion to suppress on the ground that the statement was given involuntarily and without intelligent knowledge. Following an in-chambers hearing, the motion was denied and the statement was introduced into evidence over Miller's objections. On appeal to this court Miller contends that the trial court erred in denying his motion to suppress, and that is the only question before us.

At the hearing on the motion to suppress, Sergeant Robert Casto testified that Miller was arrested about 3 a.m. on April 6, 1971. He says that Miller was intoxicated when arrested and that he was placed in the city jail at Rogers. He says that he did not attempt to question Miller when he was first taken into custody, but that about 2:00 p.m. on April 6, after Miller had become sober, he did question him concerning the theft of the automobile. He says that he told Miller that Pion had implicated him in the theft of the automobile, and that after advising Miller as to his constitutional rights, Miller voluntarily waived his rights and voluntarily gave him a detailed statement as to how he and Pion had

taken the automobile and abandoned it near Seligman, Missouri. He says that he wrote Miller's statement out in longhand and had Miller check it for accuracy. He says that he then copied the statement on a typewriter and again had Miller check it for accuracy before signing it. He testified that after Miller's constitutional rights had been read and explained to him, Miller voluntarily signed an acknowledgment and waiver of his rights, and signed the typewritten statement he had made to the officer. Patrolman Troy McGuire confirmed Sergeant Casto's testimony.

Appellant Miller testified at the hearing on the motion to suppress. He testified that he was arrested about 3:30 a.m. and placed in jail. He says that he was not interrogated at that time and that his constitutional rights were not explained to him. He says that about six or seven hours later he was taken out of his jail cell and interrogated by the officers. He says that he was given no water before introgation and was only given a roll and some coffee for breakfast. He testified that he has a problem with alcohol and had been drinking heavily prior to his arrest. On direct examination he testified, in part, as follows:

> "Q. When they interrogated you, did they warn you of your rights before the interrogation started?
>
> A. I'm not really too sure about it. I can't really truthfully answer that.
>
> Q. When you made your statement, did the police officer read it back to you?
>
> A. No, they did not.
>
> Q. Did he let you read it?
>
> A. I didn't read it.
>
> Q. What did he tell you to do?

A. I went back to that cell.

Q. Did he let you sign it?

A. I signed it, yes.

Q. But he didn't let you read it?

A. I didn't read it."

On cross-examination Mr. Miller testified that he had been drinking and does not remember whether his constitutional rights were explained to him or not. He admitted the genuineness of his signature on the written waiver as well as the statement, but testified that he does not remember of ever seeing the waiver form. Miller testified that he was familiar with his constitutional rights and had them explained to him before. But, he testified that he would not have been able to read the instruments he signed even if he had examined them. The overall substance of Mr. Miller's testimony as to his signed waiver and statement, is to the effect that he was too drunk to read and too drunk to know what was going on at the time he signed the waiver and statement.

According to Mr. Miller's testimony, he remembered that the police officers advised him that Pion had made a statement involving him. He then testified as follows:

"Q. Did they make any promises to you?

A. They said if I didn't do something, it was on me—the whole thing.

Q. If you didn't do something, it was on you?

A. (The witness nods affirmatively.)

Q. Did you feel that you were compelled to make a statement after they told you of Peter J. Pion's statement?

A. Yes."

Miller again testified that he did not remember ever reading the statement before the hearing, but even if he had read it on the date it was signed, it would have made no difference because he would not have been able to understand it. He then read the statement into the record as follows:

" 'On the 3rd of April, 1971, at approximately 9:00 p.m. Pete Pion and I were in Springdale when my car broke down at the Carriage Inn. We started walking back to Rogers when we saw a red Mustang parked at the Smokehouse Cafe. I hid in some bushes while Pion got the car started and picked me up. We used side roads to keep off the highway and someplace southeast of Rogers, Pion run the car in a ditch but we got out and drove to Seligman, Missouri, where we had a flat on the front tire. We then parked the car, parked the Mustang, and took a white Ford Ranchero that was parked across the railroad tracks from Highway 37. Pion and I hotwired this vehicle and drove back to Rogers, Arkansas. Pion drove the Ranchero out Highway 12 east of Rogers and parked it on a dirt road. I followed him in a green station wagon I borrowed from Cecil Harris and picked him up and came back to Rogers.' "

Miller then testified as follows:

"Q. Mr. Miller, is that the first time you've ever read that statement?

A. It is.

Q. Do you understand it? Did you understand what you just now read?

A. I understand it, but I don't believe—.

Q. Is that basically the same thing that you told Mr. Casto on the morning of April 6th?

A.  About that."

We are of the opinion that the trial court did not err in denying Miller's motion to suppress. Miller had no difficulty remembering that he was placed in a single cell at the Rogers City Jail and was only furnished a roll and coffee for breakfast. He remembers that he had no water to drink but does not say he requested water or that it was denied him. He does not deny that he made the statement attributed to him by Officer Casto. He admits the genuineness of his signatures on both the waiver and the statement. He simply says that he did not read the instruments he signed and would not have understood them had he read them. The signatures on both instruments are clear and legible.

We conclude, therefore, that the trial court did not err in holding that the "statement was voluntarily and knowledgably given after the defendant was advised of his rights," and we hold that the trial court did not err in denying the motion to suppress and in admitting the statement into evidence.

The judgment is affirmed.