# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00127-CV

**Harold Parsons and Peggy Parsons, Appellants**

**v.**

**Ford Motor Company and SRH, Inc. d/b/a Billy Young Isuzu; Billy Young Lincoln Mercury; and Billy Young Suzuki, Appellees**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 176,689-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

This is an appeal from the granting of a no-evidence summary judgment in a product liability case. The case arises out of a fire that originated in Harold and Peggy Parsons=s (the AParsons@) 1989 Lincoln Town Car when it was parked in their garage. The fire destroyed the Parsons=s car and home. They sued the manufacturer and the dealer who five months before the fire allegedly replaced a defective part in the Town Car, subject to a safety recall. Eventually, the Parsons settled their claims against the dealer. The trial court entered a take-nothing summary judgment in favor of the manufacturer, Ford Motor Company.

We hold that, while there is evidence that the alleged defect was present at the time the car left the manufacturer=s control, the Parsons=s reliance on *res ipsa loquitur* cannot overcome the effect of the dealer=s intervening repair and replacement of the allegedly defective part. Because the Parsons failed to

otherwise present credible evidence that the defect was present at the time of the fire or that it caused the fire, we affirm the trial court=s summary judgment.

**FACTUAL BACKGROUND**

On August 19, 1997, Peggy Parsons parked the Town Car in her garage and turned off the motor. Sometime later, the unattended car suddenly and spontaneously burst into flames. Mrs. Parsons tried in vain to extinguish the fire. It spread and eventually destroyed the Town Car, the garage, and the Parsons=s home.

The couple purchased the 1989 Lincoln Town Car from Connell Chrysler Plymouth in Killeen, in March 1995. The car had 68,779 miles on the odometer at that time and was in A very good condition.@ The Parsons testified that A[w]e never had any after-market accessories and drove the car without incident until March 1997.@ Mr. Parsons took the car to Billy Young Lincoln Mercury in March 1997 to have the air conditioner repaired. In addition, he asked the dealer to replace the ignition switch as he had been advised to do by Ford in a recall letter the Parsons received several months earlier. No subsequent work was done to the car.

2

David Kingsley, the fire marshal, testified by affidavit that on August 18, 1997, he responded to a residential fire at the Parsons=s home which engulfed the entire structure. The next day he conducted an investigation into the origin and cause of the fire. He Ainterviewed witnesses and examined the scene thoroughly.@ The fire damage was so extensive it prevented him from determining Athe exact cause of the fire.@ However, he was able to rule out arson and concluded that Athe fire had its origin in the 1989 Lincoln Town Car which was parked in the garage.@ He determined that the fire subsequently spread to the remainder of the garage and house. Only the fire marshal inspected the fire scene, including the car and the garage. The car was turned over to the Parsons=s property insurer which disposed of it as salvage. Thus, the car was unavailable for examination and testing during this litigation.

The Parsons filed suit against Ford and SRH, Inc., a corporate entity doing business as Billy Young Lincoln Mercury. The suit alleged claims for negligence, deceptive trade practices, breach of warranties, and strict products liability. They alleged a general defect in the 1989 Lincoln Town Car because the design and manufacture of the car were peculiarly within the knowledge of Ford and in its exclusive control. They expressly pleaded the doctrine of *res ipsa loquitur*, and that on the day of the fire the ignition switch was Ain the same condition it was in when it left the control of the Defendant, Ford Motor Company.@ They pleaded that the spontaneous fire was an occurrence which, in the ordinary course of events, would not have occurred without negligence on the part of the defendants and/or a defect in the car. The Parsons sought recovery for property damage, along with past and future mental anguish.

Both defendants urged no-evidence summary judgment motions which the district court granted and the Parsons appealed. Billy Young Lincoln Mercury did not file a brief in this Court, and the Parsons have now advised the Court that they settled their claims against the dealer, Billy Young Lincoln

**3**

Mercury, leaving only their claims against Ford in issue. The Parsons filed the following documentary evidence in response to the motions.

Peggy Parsons testified by deposition that on the day of the fire, just before 8:00 p.m., she brought her grandson home from gymnastics class. She testified that the car had driven Aslower, lumpy-bumpy.@ She parked it in the family=s garage next to their other vehicle. When she got out of the car she smelled Aa strange smell.@ She went into the house and told her husband that there was something wrong with the car, that Ait smells.@ Then, the car explodedCshe heard a Areal scary, real huge blast.@ She went out and tried to extinguish the fire with a water hose to no avail. She then backed the other car out of the garage. She testified that flames were Acoming up from the front of the car@; AI could see flames right next to the window, the front windshield, and the whole front of the car@ was in flames.

In his deposition, Harold Parsons said that he was watching television when his wife came in and asked him to examine the car. He told her that he would Asee about it after it cooled down@ from being driven. Then he heard an explosion and his wife told him that Athe car=s afire@ and to Acall 911.@ He said he opened the door and saw the fire blazing. By affidavit he said, AI went directly to the garage and opened the door; our Lincoln Town Car was on fire. The flames were coming out from between the hood and the windshield.@ He also said that their home and all their possessions were destroyed by the fire.

In an effort to prove that the car remained in the same condition it was in when it left Ford=s control, the Parsons submitted the affidavit of William D. Melton, the original owner of the car. He testified that he purchased the 1989 Lincoln Town Car new from Pavilion Lincoln Mercury in Austin in November 1989. He drove it until February 1995, when he traded it in for another Lincoln at A-Plus Auto Sales in Killeen. At that time, the car had 68,762 miles on it. He testified that while he owned the car, he

experienced only one problem, a Avery minor air conditioning problem.@ He also said that A[n]o after market electrical components were installed in it@ and that Ford never warned him of any dangers.

Gayle Skaggs, the owner of A-Plus Auto Sales in Killeen, testified by affidavit that he purchased the Town Car in question from William Melton on February 27, 1995, and sold it to Connell Plymouth on March 1, 1995. While he owned it, the car was driven very little, if at all, and Ano other changes were made to it.@ When he sold the car to Connell Chrysler Plymouth, it had only 68,762 miles on the odometer.

The Parsons submitted the title history of their vehicle showing the various owners and mileages at the time of each sale and the warranty repair history of the vehicle. The repair documents show repairs in 1989, 1990, and 1993, none of which appear to have been related to the ignition switch or the electrical system. Finally, the Parsons submitted a copy of Safety Recall 95S28, dated April 24, 1996, regarding all 1988 through 1993 Lincoln Town Cars. The recall is identified as ASafety Related,@ and states:

> On some of the affected vehicles, a short circuit could develop in the ignition switch that could lead to overheating, smoke, and possibly fire in the steering column area of the vehicle. The condition may occur while the vehicle is in use or unattended. To correct this potential condition, the ignition switch will be replaced with a revised design switch. The wiring in the upper steering column area will also be inspected for the installation of any aftermarket electrical accessories. If an improper installation is noted you are to advise the customer of the need to have the condition corrected. These correction costs are not part of this recall.

The recall notice also states that AThis switch is used on approximately 70% of affected vehicles.@

The record contains several volumes of documents submitted by Ford to the National Highway Traffic Safety Administration (ANHTSA@) pursuant to that agency=s investigations of vehicle fires

originating in the steering columns or ignition assemblies of Ford vehicles. These documents include several hundred customer complaint reports compiled by Ford documenting spontaneous vehicle fires in 1989 Lincoln Town Cars. The Parsons also relied on these documents to defeat the summary judgment motions.

## DISCUSSION

### I. *Standard and Scope of Review*

This is an appeal of a no-evidence motion for summary judgment granted under Texas Rule of Civil Procedure 166a(i). A no-evidence summary judgment motion must specify the elements of the non-movant=s claim or defense on which there is no evidence. *Macias v. Fiesta Mart, Inc.*, 988 S.W.2d 316, 316-17 (Tex. App.CHouston [1st Dist.] 1999, no pet.). The burden then shifts to the non-movant to bring forth evidence raising a fact issue on the challenged elements. *Id.* The non-movant has the burden to present enough evidence to be entitled to trial. *Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 432 (Tex. App.CHouston [14th Dist.] 1999, no pet.).

Review of a no-evidence summary judgment is similar to that of a pretrial directed verdict. *Domizio v. Progressive County Mut. Ins. Co.*, 54 S.W.3d 867, 871 (Tex. App.CAustin 2001, no pet.). Thus, we must determine whether the Parsons produced any evidence of probative force to raise genuine fact questions on the essential elements of their claims placed in issue by Ford. *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex. App.CAustin 1998, no pet.). The motion should be granted if the non-movant fails to bring forth more than a scintilla of probative evidence on the material issues in question. *Domizio*, 54 S.W.3d at 871. More than a scintilla of evidence exists if the evidence Arises to a level that would enable reasonable and fair-minded people to differ in their conclusions.@ *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (quoting *Transport. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994)).

## II.    *Pleaded Claims and Grounds for No-Evidence Summary Judgment*

The Parsons=s petition asserted claims for strict products liability, negligence, breaches of express warranty and the implied warranties of merchantability and fitness, and violations of the Texas Deceptive Trade Practices Act (ADTPA@). All causes of action were predicated on the existence of a product defect in the Town Car. Ford moved for summary judgment on all claims, attacking the premise that a defect existed in the car and that it caused the fire. Ford=s specific grounds for summary judgment were that (1) there was no evidence that a defect in the ignition switch existed at the time of the sale; (2) there was no direct evidence of a defect in the replaced ignition switch; (3) there was no direct evidence that a defect in the replaced ignition switch caused the fire; and (4) there was no circumstantial evidence of a defect in the replaced ignition switch. We agree with the latter three points.

**III.**   *Strict Products Liability*

Texas adopted section 402A of the Restatement (Second) of Torts providing for strict liability for the sale of dangerously defective products. *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 788-89 (Tex. 1967). A manufacturer who places into the stream of commerce a dangerous product by reason of some defect is strictly liable in tort to one who sustains injury because of the defect.[1] *Darryl v. Ford Motor Co.*, 440 S.W.2d 630, 633 (Tex. 1969). The essential elements of a strict liability case are (1) a product defect; (2) that existed at the time the product left manufacturer=s hands; (3) the defect made the product unreasonably dangerous; and (4) the defect was a producing cause of plaintiff=s injuries. *See Rourke v. Garza*, 530 S.W.2d 794, 798, 801 (Tex. 1975).

**A.   Proof of Defect By Circumstantial Evidence**

Direct evidence is not required to establish the existence of a defect; often it can only be proven by circumstantial evidence, particularly when a latent defect is involved. *Darryl*, 440 S.W.2d at 632; *Barnett v. Ford Motor Co.*, 463 S.W.2d 33, 35 (Tex. Civ. App.CWaco 1970, no writ). Whether a defect existed in an auto when it left each defendant=s hands is frequently a matter of inference. *See Darryl*,

---

[1] Texas courts apply strict liability to manufacturers and sellers of used products. *Turbines, Inc. v. Dardis*, 1 S.W.3d 726, 734 (Tex. App.CAmarillo 1999, pet. denied); *Hovenden v. Tenbush*, 529 S.W.2d 302, 306 (Tex. Civ. App.CSan Antonio 1975, no writ); *McLain v. Hodge*, 474 S.W.2d 772, 776 (Tex. Civ. App.CWaco 1971, writ ref=d n.r.e.); *see also Pennington v. Singleton*, 606 S.W.2d 682, 687 (Tex. 1980) (representing that used product is in good condition when it is not is actionable misrepresentation under DTPA).

440 S.W.2d at 632. To establish a defect through circumstantial evidence, one must prove both (1) proper use of the product and (2) malfunction. *Plas-Tex, Inc. v. U.S. Steel Corp*., 772 S.W.2d 442, 444-45 (Tex. 1989).

Moreover, a plaintiff need not identify the specific defect that caused the injury. *V. Mueller & Co. v. Corley*, 570 S.W.2d 140, 143 (Tex. Civ. App.CHouston [1st Dist.] 1978, writ ref=d n.r.e.). However, the plaintiff must trace the defect to the manufacturer. *Id*. A plaintiff may prove a manufacturing defect existed from evidence of the product=s malfunction. *Gen. Motors Corp. v. Hopkins*, 548 S.W.2d 344, 349-50 (Tex. 1977); *Ford Motor Co. v. Gonzalez*, 9 S.W.3d 195, 199 (Tex. App.CSan Antonio 1999, no pet.). This rule developed because a consumer or end-user is not in a position to know the manufacturing process or how the defect might have occurred. *Gonzalez*, 9 S.W.3d at 199. A malfunction, in turn, may be established by testimony from the product=s user about the circumstances surrounding the event in question. *See id*.; *Sipes v. General Motors Corp*., 946 S.W.2d 143, 155 (Tex. App.CTexarkana 1997, writ denied). Expert testimony is not necessarily required to establish a manufacturing defect. *See Sipes*, 946 S.W.2d at 156.

To be entitled to the application of *res ipsa locquitur*, a plaintiff still has the burden of establishing proper use and handling of the product after it left the manufacturer=s control. *Dardis*, 1 S.W.3d 735. A[T]he mere fact that an accident occurred is not sufficient proof that the automobile was defective.@ *Hernandez v. Nissan Motor Corp*., 740 S.W.2d 894, 895 (Tex. App.CEl Paso 1987, writ denied). A plaintiff Amust prove that he has been injured or damaged by a defective product, and the mere possibility that this may have occurred is not enough.@ *Carroll v. Ford Motor Co.*, 462 S.W.2d 57, 61 (Tex. Civ. App.CHouston [14th Dist.] 1970, no writ). For example in *Bass v. General Motors Corp*., 447 S.W.2d 443 (Tex. Civ. App.CFort Worth 1968, writ ref=d n.r.e.), the plaintiff admitted that prior to the fire in his car he pulled electrical wires out from around the car=s horn. This type of alteration of the car=s electrical system prevented the application of the *res ipsa locquitur* doctrine in that case. *See id.* at 446.

Courts tend to look to such factors as the product=s age and its usage as indications of the likelihood that the malfunction resulted from an original defect. *Dardi*s, 1 S.W.3d at 735. In cases involving automobiles, the vehicle=s age and mileage are often considered in determining whether to apply *res ipsa locquitur*. *See*, *e.g.*, *Harrison v. Bill Cairns Pontiac of Marlow Heights, Inc*., 549 A.2d 385, 391-92 (Md. Ct. App. 1988) (refusing to apply *res ipsa* to five-year-old Ford-Mercury Zephyr with 58,855 miles because it had been too long since vehicle had been in manufacturer=s hands to allow inference of defect); *Quirk v. Ross*, 476 P.2d 559, 563 (Or. 1970) (AAfter two owners, innumerable servicings, and 39,000 miles of use free from brake difficulties except for last few miles, no inference can be drawn that a defect existed in the brakes at the time of the vehicle=s manufacture or that any such defect was the cause of the accident.@).

However, Texas courts consider age and mileage only as relevant factors to be considered by the trier of fact. *Nissan Motor Co. v. Armstrong*, 32 S.W.3d 701, 709 (Tex. App.CHouston [14th Dist.] 2000, pet. filed, record requested) (holding six-year-old car with 93,000 miles not disqualified considering Nissan=s own engineering analysis and internal reports reflecting that design defect existed at time of sale). Texas courts also hold that if a manufacturer places a product into the stream of commerce that is so fragile that its anticipated use is likely to create a dangerous condition, that manufacturer has distributed a defective product. *Armstrong*, 32 S.W.3d at 709; *USX Corp. v. Salinas*, 818 S.W.2d 473, 489 n. 16 (Tex. App.CSan Antonio 1991, writ denied); *Sharp v. Chrysler Corp.*, 432 S.W.2d 131, 136 (Tex. Civ. App.CHouston [14th Dist.] 1968, writ ref=d n.r.e.). The Ford reports presented by the Parsons indicate that the defect in question tended to occur only after considerable use and mileage. Emulation is not a consequence of ordinary wear and tear associated with cars driven between 60,000 and 120,000 miles. While the age and mileage of the Parsons=s Town Car is of some relevance, they are not the determining factors in this case.

**B. Existence of Defect in Manufacturer=s Control**

Courts have generally held that manufacturers= recall letters are admissible and help establish the existence of a defect at the time the vehicle left the manufacturer=s or seller=s control, if there is otherwise independent evidence of the existence of the defect in the specific vehicle in question. *Longenecker v. Gen. Motors Corp.*, 594 F.2d 1283, 1286 (9th Cir. 1979); *Nevels v. Ford Motor Co.*, 439 F.2d 251, 258 (5th Cir. 1971); *In re Multi-Piece Rims Prod. Liab. Litig.*, 545 F. Supp. 149, 151 (W.D. Mo. 1982); *Harley-Davidson Motor Co. v. Carpenter*, 350 So.2d 360, 361 (Fla. Ct. App. 1977); *Harley-*

**11**

*Davidson Motor Co. v. Daniel*, 260 S.E.2d 20, 22-23 (Ga. 1979); *Manieri v. Volkswagenwerk A.G.*, 376 A.2d 1317, 1323-24 (N.J. Super. 1977); *Fields v. Volkswagen of Am., Inc.*, 555 P.2d 48, 57-58 (Okla. 1976); *see also Holmquist v. Volkswagen of Am., Inc.*, 261 N.W.2d 516, 523 (Iowa Ct. App. 1977); *Coleman v. Ford Motor Co.*, 240 So.2d 607, 610 (Miss. 1970).[2]

## IV. *Causation*

In cases involving latent defects, a plaintiff need not disprove all possible other causes for the injuries. *Darryl*, 440 S.W.2d at 632; *Mahan Volkswagen, Inc. v. Hall*, 648 S.W.2d 324, 328 (Tex. App.CHouston [1st Dist.] 1982, writ ref=d n.r.e.); *Sharp v. Chrysler Corp.*, 432 S.W.2d 131, 135 (Tex. Civ. App.CHouston [14th Dist.] 1968, writ ref=d n.r.e.) (a Aplaintiff is not required to exclude an appreciable chance that the event might have occurred in some other way. Expressed otherwise, a

---

[2] Manufacturers= records of customer complaints and reports also have been held admissible in products liability cases to prove knowledge on the part of the manufacturer of the existence of a defect in its product. *See*, *e.g.*, *Shields v. Strum, Ruger & Co.*, 864 F.2d 379, 381 (5th Cir. 1989); *Firestone Tire & Rubber Co. v. Adams*, 541 A.2d 567, 571 (Del. 1988). In *Wright v. General Motors Corp.*, 717 S.W.2d 153, 155 (Tex. App.CHouston [1st Dist.] 1986, no writ), the manufacturer=s recall letter, dealer product campaign bulletin, and testimony of one of the manufacturer=s engineers about results of an in-house evaluation were considered in sustaining a judgment against a manufacturer.

conclusion of causal connection may be inferred by a balance of probabilities.@).**[3]** The plaintiff, however, must present some evidence or circumstances with which to Abalance the probabilities.@

## V. *Res Ipsa Loquitur*

The doctrine of *res ipsa loquitur* can apply to both negligence and strict liability cases to provide a presumption of product defect and causation. Its purpose is to relieve the plaintiff of the burden of proving a specific act of negligence by the defendant when it is impossible for the plaintiff to determine the actual sequence of events and it is the defendant has superior knowledge or access to information to determine the cause of the accident. *Jones v. Tarrant Util. Co.*, 638 S.W.2d 862, 865 (Tex. 1982); *Dardis*, 1 S.W.3d at 740. It is applied only when two factors are present: (1) the character of the injury is such that it would not have occurred in the absence of negligence; and (2) the instrumentality which caused the injury is shown to have been under the sole management and control of the defendant. *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex. 1989); *Dardis*, 1 S.W.3d at 741. The first element ensures there is support for the inference of negligence and the second supports the inference that defendant was the negligent party. *Dardis*, at 741. Texas requires that the plaintiff Aso reduce@ the likelihood of other causes that the jury can reasonably find by a preponderance of the evidence that the negligence, if any, lies at the defendant=s door. *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 251 (Tex. 1974); *Dardis*, 1 S.W.3d at 741.

---

**[3]** One Texas court has held that in the Abalance of probabilities@ the court may consider other reports of similar incidents. *See Nissan Motor Co. v. Armstrong*, 32 S.W.3d 701, 710 (Tex. App.CHouston [14th Dist.] 2000, pet. filed, record requested).

We find that the facts and circumstances established by the Parsons satisfy the first prong of the *res ipsa locquitur* test. Cars parked with their engines disengaged, sitting in garages with no one around, do not just spontaneously erupt in flames in the absence of negligence or a product defect. *See generally Barnett v. Ford Motor Co.*, 463 S.W.2d 33 (Tex. 1970).[4]

Although the circumstances of the fire satisfy the first prong of the test for *res ipsa loquitur*, the fact that the allegedly defective ignition switch was replaced before the fire prevents the application of the doctrine in this case. The Parsons acknowledge this fact but argue that only three possibilities exist that rationally explain the fire: (1) the dealer failed to actually replace the ignition switch with a redesigned one; (2) the dealer defectively or negligently installed a redesigned ignition switch; or (3) the redesigned ignition switch was itself defectively dangerous.

If there was some independent evidence that a defective ignition switch was actually in the 1989 Lincoln Town Car at the time of the fire, the Parsons=s evidence would raise a fact issue on their causes of action. If such evidence existed, then issues such as whether a redesigned ignition switch was

---

[4] *See also Gen. Motors Corp. v. Marter*, 447 So.2d 1291 (Ala. 1984); *Ford Motor Co. v. Reid*, 465 S.W.2d 80 (Ark. 1971); *Hall v. Everett Motors, Inc*., 165 N.E.2d 107 (Mass. 1960); *State Farm Fire & Cas. Co. v. Chrysler Corp*., 523 N.E.2d 489 (Ohio 1988); *Ford Motors Co. v. Pittman*, 227 So.2d 246 (Fla. Ct. App. 1969); *Losinski v. Ford Motors Co.*, 204 N.W.2d 49 (Mich. Ct. App. 1972); *Jacobson v. Broadway Motors, Inc. and Ford Motor Co.*, 430 S.W.2d 602 (Mo. Ct. App. 1968); *Cincinnati Ins. Co. v. Volkswagen of Am., Inc.*, 502 N.E.2d 651 (Ohio Ct. App. 1985); *Cornell Drilling Co. v. Ford Motor Co.*, 359 A.2d 822 (Pa. Ct. App. 1976).

**14**

actually installed or was itself defective would be fact questions for the trier of fact. The dispute then would center on which of the two defendants and three scenarios more likely than not caused the fire.

However, the Parsons lack any evidence of the alleged defect in their car at the time of the fire. The car was destroyed preventing forensic evaluation. The Parsons have presented evidence that more likely than not Ford sold a defective car. But, the issue before the Court is whether the doctrine of *res ipsa locquitur* is available to the Parsons to show that defect existed on the day of the fire and was the cause of the fire. To be entitled to a *res ipsa locquitur* presumption, the Parsons must establish that the car (or at least the ignition switch) was unaltered since the time it left Ford=s control at the initial sale. The recall replacement interrupts that causal chain, and there is no evidence that the defect persisted beyond the recall repair so as to overcome the interruption.

The purpose of the second prong of the *res ipsa* test is to ensure that the defendant is, more likely than not, the culpable party. *See Mobil Chem. Co.*, 517 S.W.2d at 251; *Dardis*, 1 S.W3d at 741. The recall work done by Billy Young Lincoln-Mercury effectively changed the condition of the car, one way or the other, to such an extent that it prevents the application of the *res ipsa locquitur* doctrine. *See*, *e.g.*, *Doyle Wilson Homebuilder, Inc. v. Pickens*, 996 S.W.2d 387 (Tex. App.CAustin 1999, pet. dism=d agr.); *Bass*, 447 S.W.2d 443.

In *Bass*, the plaintiff parked his car and later found it ablaze when he returned after several hours. *Bass*, 447 S.W.2d at 444-45. In his suit against the manufacturer, there was testimony from the fire chief that the origin of the fire was electrical, caused by a short circuit. Bass admitted that earlier in the day he had pulled the electric wires loose from the horn and had not secured the loose wires. Bass had never complained to the dealer about the electrical system. *Id.* In affirming a directed verdict for the manufacturer, the court observed that the A plaintiff proved nothing more than the fact that the automobile was damaged as a result of an electrical fire . . . . There is no evidence . . . the wiring was defective, . . . or that any defect was the proximate cause of the fire, nor is there any evidence of faulty design.@ *Id*. at 447. The court said A[p]roximate cause is not to be presumed. It must be proved.@ *Id*.

Finally, the Parsons presented evidence of another incident of a fire spontaneously igniting after the ignition switch had been replaced under the Ford recall. That complaint involved a steering column fire that occurred after the recall repair had been made. Evidence of one other fire after a recall repair does not provide the level of probability necessary to ensure that liability more likely than not lies at Ford=s door, as required for application of *res ipsa locquitur*. We hold that this evidence is not sufficient to raise a genuine fact question. Assuming, *arguendo*, the Parsons are correct in their analysis, there is simply no evidence in the record to indicate which scenario more likely occurred, *i.e.*, the recall repair was not made; the recall repair was performed inadequately; or the replacement ignition switch was itself defective. It is only under the third scenario that Ford potentially could be liable. Under the first two scenarios, the dealer would bear the liability. There is likewise no evidence in connection with the extraneous post-recall-repair fire indicating which of the three scenarios likely occurred in that incident. Without some evidence tending

16

to make the third scenario more likely than the others, the Parsons cannot maintain their lawsuit against Ford.

## CONCLUSION

On the record presented, we hold that the district court did not err in granting summary judgment in favor of Ford Motor Company.  We affirm the judgment.


Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed:   June 21, 2002

Publish