**WEST TEXAS GAS, INC., Appellant,**

v.

**297 GAS COMPANY, INC. and North Texas Gas Company, Inc., Appellees.**

No. 07–92–0290–CV.

Court of Appeals of Texas, Amarillo.

Sept. 28, 1993.

McMahon Tidwell Hansen Atkins & Fowler, PC, Odessa (G. William Fowler and Denis Dennis), Jim B. Brown, Canyon, for appellant.

Hunter & Oelke, Dalhart (William Hunter and Greg Oelke), Culton Morgan Britain & White, Amarillo (Charles R. Watson, Jr. and Mark D. White), for appellees.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

West Texas Gas, Inc. perfected this appeal from a take-nothing summary judgment rendered in its declaratory judgment action to impose liability on 297 Gas Company, Inc. and North Texas Gas Company, Inc. for tortious interference with its right to sell gas under, and for civil conspiracy to deprive it of the benefits of, an agricultural gas service agreement. On the rationale expressed, West Texas Gas' points of error will be overruled and the judgment will be affirmed.

West Texas Gas, Inc. (West Texas), a Texas corporation with its principal place of business in Midland County, is in the business of selling natural gas. 297 Gas Company, Inc. (297), a Texas corporation located in Dallam County, owns a gas-transmission line and, for several years prior to this litigation, bought natural gas, transported the gas through its transmission line, and then resold the gas to farmers in Dallam County. North Texas Gas Company, Inc. (North Texas), a Texas corporation located in Dallam County, is in the business of selling natural gas and is in competition with West Texas Gas.

On March 29, 1988, West Texas and 297 entered into an agricultural gas service agreement providing for West Texas' sale, and 297's purchase, of natural gas, which 297 transported through its transmission line and resold to farmers for their irrigation wells located in Dallam County. The agreement, which did not obligate 297 to purchase natural gas exclusively, or a minimum amount of it, from West Texas, was for a primary term of one year and thereafter from year-to-year, unless either party terminated the agreement by written notice not more than sixty days, or less than thirty days, before the end of each one-year period. The agreement provided West Texas with an option to meet any third-party offer acceptable to 297, in which event 297 agreed to give an exact copy of the firm offer to West Texas, which then had twenty business days to meet the third-party offer.

The contracting parties were operating under their agreement on February 20, 1991, when 297 contracted with, and agreed to buy its natural gas from, North Texas. The contract consisted of three documents, viz., an irrigation gas sales contract, an operating fee agreement, and an amendment to the irrigation gas sales contract, and was to take effect on March 30, 1991. The sales contract provided it was to continue through March 30, 1992 and thereafter from year-to-year, unless and until either party terminated the agreement by written notice at least thirty days before the end of each one-year period, but the amendment gave 297 the exclusive right to cancel the contract at any time with only ten days written notice.

On the same day, February 20, 297 sent a letter to West Texas terminating their 1988 agreement, and transmitting a copy of its 1991 contract with North Texas. By its termination letter, 297 questioned the enforceability of the option provision in their agreement; nevertheless, 297 informed West Texas that it had twenty business days to meet all of the terms of the 1991 contract, and if it did so, 297 would decide whether it intended to take the position that the option provision in the 1988 agreement was unenforceable. On March 11, 1991, West Texas notified 297 that it was exercising its option under their 1988 agreement to meet North Texas' offer "in its entirety and assume all terms and conditions of that February 20, 1991 offer and its attachments."

Subsequent to the notification, representatives of 297 and North Texas met on at least three occasions. The purpose of the meet-

ings was to discuss possible options that might be available for 297 to avoid doing business with West Texas.

On March 27, 1991, West Texas contacted North Texas, and explained that it had exercised its option under its 1988 agreement with 297, and asked North Texas to refrain from interfering with the 1988 agreement. Hours later, 297 informed West Texas that it would no longer buy gas from West Texas or anyone else, because it had leased its gas-transmission line to North Texas. The lease agreement was executed on March 27, 1991.

West Texas began this litigation on April 17, 1991, when its original petition was filed. West Texas sought a declaratory judgment that it had lawfully exercised its option rights under the 1988 agreement, that it had a right to sell gas to 297 and to operate the gas-transmission line in accordance with the terms of the 1991 contract, that its contractual right to sell gas has not terminated, and that 297 wrongfully terminated the contract between the parties. West Texas also alleged that North Texas had tortiously, willfully, and intentionally interfered with its right to sell gas to its monetary damage.

After further pleadings and discovery proceedings, both 297 and North Texas moved for summary judgment in January, 1992. 297 asserted its entitlement to summary judgment for three reasons. First, the 1988 agreement was unenforceable, because it was not an entireties contract, and it did not obligate 297 to buy gas exclusively from West Texas. Second, because West Texas agreed to meet the terms of the 1991 contract, 297 had the right to cancel at any time with only ten days written notice, and had done so by its letter of March 27, 1991, or does so by its motion so that there will be no enforceable contract by the time of the hearing on its motion. Third, since 297 had entered into the March 27, 1991 lease, it has not bought, and does not intend to buy, gas from anyone and, therefore, the issue whether West Texas has a right to sell gas is moot.

In moving for summary judgment, North Texas maintained it was entitled to summary judgment for two reasons. First, West Texas' option in the 1988 agreement was unenforceable, the agreement was cancelled by

297, and the issue of West Texas' right to sell gas has become moot. Second, there was no tortious interference since the 1988 agreement expressly recognized 297's right to negotiate and enter into other contracts to buy gas, its involvement was privileged by competition and the nature of its lease relationship with 297.

West Texas responded to 297's and North Texas' motions for summary judgment, contending that they had not proven as a matter of law that they were entitled to summary judgment. West Texas submitted there were numerous unresolved questions of material fact, specifically whether (1) it had an option to sell gas to 297, (2) North Texas interfered with its right to sell gas to 297, (3) North Texas' actions were privileged competition, (4) 297 and North Texas conspired to deprive it of its option rights under the 1988 agreement, and (5) 297 intended to quit business.

On April 3, 1992, the trial court conducted a hearing on the motions for summary judgment, at which the parties argued the issues raised in the original petition, the motions for summary judgment, and the response to the motions. A month later, on May 4, 1992, West Texas filed an amended petition, alleging breach of contract, fraud, and civil conspiracy against 297, and tortious interference and civil conspiracy against North Texas.

Then, on May 18, 1992, the court signed a judgment, by which the court, after reciting that "On April 3, 1992, the Court heard the Motion for Summary Judgment ... argument from counsel ... on the issues raised in the motion and response of the parties, as well as the summary judgment evidence properly before the Court," granted summary judgment and ordered that West Texas take nothing from North Texas. Four days later, on May 22, the court signed a like judgment, ordering that West Texas take nothing from 297.

Initially charging the trial court with error in granting the motion[s] for summary judgment, West Texas formulates one other point of error, 1(a), as a specific contention of error in granting the motion, and two other points of error, 1(b) and 2, as specific contentions of

error in granting summary judgment. West Texas' specific contentions are that (1(a)) there was no summary judgment issue or evidence to disprove any element of its civil conspiracy claim, (1(b)) there was a material issue of fact as to each element of its tortious interference claim, and (2) it had an enforceable option pursuant to a binding bilateral contract.

■ However, West Texas' contention that the trial court erred in granting the motion[s] for summary judgment, because there was no summary judgment issue or evidence before the court to disprove any element of its civil conspiracy claim, is unavailing. This results since the claim was not properly before the court for consideration.

■ Although West Texas included in its response to the motions for summary judgment the allegation that there was a material question of fact that 297 and North Texas conspired to deprive it of its option rights, West Texas had not then pleaded the civil conspiracy added by its amended pleading filed a month after the hearing on the motions for summary judgment. Thus, when 297 and North Texas filed their motions for summary judgment, their burden was only to meet West Texas' case as then pleaded. *Torres v. Western Casualty and Surety Company*, 457 S.W.2d 50, 52 (Tex.1970).

In this connection, rule 166a(c), Texas Rules of Civil Procedure, provides that the trial court shall render summary judgment if the pleadings and summary judgment evidence "on file at the time of the hearing, or filed thereafter with permission of the court," show that the movant is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response. As previously noted, at the time of the hearing, West Texas' amended petition alleging civil conspiracy was not on file, and the record does not show that its filing one month later, albeit before the court signed the summary judgments, was with permission of the court.

■ As material to this issue, rule 63, Texas Rules of Civil Procedure, permits parties to amend their pleadings after the date of trial only after leave is obtained from the judge, who shall grant leave unless it is shown the amendment will operate as a surprise to the opposite party. A summary judgment hearing is a trial within the meaning of rule 63. *Goswami v. Metropolitan Sav. and Loan*, 751 S.W.2d 487, 490 (Tex. 1988). Although an amended pleading, filed late but before the summary judgment hearing, may be presumed to have been considered by the trial court if the record is silent of any basis to conclude it was not considered, *id.*, that is not the situation in this cause.

Here, the summary judgment hearing was conducted on April 3, 1992, one month before West Texas amended and filed its pleadings on May 4, 1992 to allege a civil conspiracy. There is nothing to show that the amended pleading was called to the court's attention, and the record affirmatively reflects that the court did not consider it, because the court specifically recited in each judgment that on April 3, 1992, it heard the motion for summary judgment, the argument of counsel on the issues raised in the motion and response of the parties, as well as the summary judgment evidence properly before the court. It was on this state of the record that the court granted each motion for, and rendered, summary judgment. In doing so, the court cannot be faulted for its adherence to rule 166(a), *supra*. Points of error 1 and 1(a) are overruled.

■ West Texas contends with its third point of error, 1(b), that the trial court erred in granting summary judgment as to its tortious interference claim, because there was a material issue of fact as to each element of the claim. The claim consisted of the elements of (1) the existence of a contract subject to interference, (2) an act of interference which was willful and intentional, (3) such intentional act was a proximate cause of West Texas' damage, and (4) actual damage or loss occurred. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex.1991). Then, to merit the summary judgment on the claim, 297 and North Texas were required to establish that they were entitled to judgment as a matter of law, *Goswami v. Metropolitan Sav. and Loan*, 751 S.W.2d at 491, by showing that an element of the tortious interfer-

ence claim does not exist, or by establishing an affirmative defense as a matter of law. *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975).

At the time of negotiations between 297 and North Texas, the 1988 agreement between West Texas and 297 was a subsisting contract, terminable upon notice, and until terminated, North Texas was not free to tortiously interfere with it. *Juliette Fowler Homes v. Welch Associates*, 793 S.W.2d 660, 666 (Tex.1990). Still, a legal justification or excuse, which is treated as a type of privilege, is an affirmative defense to a claim of tortious interference. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689–90 (Tex.1989). Interference with a contractual relationship is privileged where it results from the bona fide exercise of a party's own rights. *Southwestern Bell v. John Carlo Texas*, 843 S.W.2d 470, 472 (Tex.1992).

By its terms, the 1988 agreement did not bind 297 to purchase all of the natural gas it might require, or any minimum amount of it, from West Texas, and the agreement not only permitted, but contemplated, 297's negotiations with other natural gas suppliers. And without regard to the option accorded West Texas to meet a third party offer, the agreement provided 297 the right to terminate the agreement upon written notice not more than sixty days, nor less than thirty days, before the end of each one year period. The summary judgment record reveals that North Texas was a business competitor of West Texas and that, pursuant to its contractual relationship with 297, 297 gave West Texas written notice of the termination within the time period specified in the agreement.

Under these circumstances, North Texas had the legal right to persuade or attempt to persuade 297 to exercise its right to terminate the 1988 agreement and to contract with it. *Kingsbery v. Phillips Petroleum Company*, 315 S.W.2d 561, 576 (Tex.Civ. App.—Austin 1958, writ ref'd n.r.e.). As a result, North Texas' act did not constitute tortious interference with the 1988 agreement, *C.E. Services, Inc. v. Control Data Corp.*, 759 F.2d 1241, 1248 (5th Cir.), cert. denied, 474 U.S. 1037, 106 S.Ct. 604, 88 L.Ed.2d 583 (1985), an issue North Texas

expressly presented to the trial court for entitlement to summary judgment. West Texas' point of error 1(b) is overruled.

In its final point, point of error 2, West Texas contends the trial court erred in rendering summary judgment because West Texas had an enforceable option pursuant to a binding bilateral contract. We do not agree.

West Texas submits that when it timely exercised its option, it became a binding unilateral contract. *Tye v. Apperson*, 689 S.W.2d 320, 323 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.). Therefore, West Texas argues, 297's attempts to cancel the contract were ineffective, and its attempts to avoid the option and render it unenforceable are a breach of the binding bilateral contract.

The immediate difficulty with West Texas' argument is that at the time of the summary judgment hearing, West Texas had not pleaded breach of contract, and in its response to the motions for summary judgment, it did not raise the issue of breach of contract to avoid 297's entitlement to summary judgment. Consequently, West Texas may not raise the issue of breach of contract on appeal as a reason to reverse the summary judgment rendered for 297. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979).

More important, however, is that West Texas' March 11, 1991 exercise of its option was "to meet the third party offer from [North Texas] in its entirety and assume all terms and conditions of that February 20, 1991 offer and its attachments." As a consequence, West Texas became bound by the provision in the 297–North Texas amendment to their gas sale contract that 297 "shall have the right to cancel this contract at any time with 10 days written notice." *Vratis v. Baxter*, 315 S.W.2d 331, 337 (Tex. Civ.App.—Beaumont 1958, writ ref'd n.r.e.). Neither 297's 1988 agreement with West Texas nor its 1991 contract with North Texas obligated 297 to buy any minimum amount of natural gas. Thus, when 297 notified West Texas on March 27, 1991 that it would no longer buy gas from West Texas or anyone

else, the notification constituted a prospective cancellation of the contract. *Manges v. Guerra*, 621 S.W.2d 652, 658 (Tex.App.—Waco 1981), *rev'd in part on other grounds*, 673 S.W.2d 180 (Tex.1984). Upon the expiration of 10 days, the cancellation rendered the contract for the sale and purchase of natural gas ineffective as a legal obligation. *Ferguson v. DRG/Colony North, Ltd.*, 764 S.W.2d 874, 887 (Tex.App.—Austin 1989, writ denied). Consequently, when West Texas filed its action 21 days later, the contract had been canceled and there was no binding contract which was enforceable, two issues 297 expressly presented to the trial court for entitlement to summary judgment. West Texas' point of error 2 is overruled.

The judgment of the trial court is affirmed.