**Jeff DOMIZIO, Frank Valenzuela and Maria Valenzuela, Appellants,**

v.

**PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY,**
Appellee.

No. 03–00–00423–CV.

Court of Appeals of Texas, Austin.

Aug. 30, 2001.

Rehearing Overruled Oct. 4, 2001.

Daniel J. Sheehan Jr., Daniel Sheehan & Associates, LLP, Dallas, for appellants.

Michael W. O'Donnell, Fulbright & Jaworski L.L.P., San Antonio, for appellee.

Before Justices KIDD, YEAKEL and PURYEAR.

DAVID PURYEAR, Justice.

Appellants Jeff Domizio, Frank Valenzuela, and Maria Valenzuela filed a lawsuit against appellee Progressive County Mutual Insurance Company ("Progressive") in Travis County district court, individually and on behalf of an alleged class, alleging that the late fees charged by Progressive for untimely payment of automobile insurance policies constituted usurious charges of interest. Alternatively, appellants allege that those charges were improper and unenforceable liquidated damages constituting unjust enrichment. Progressive filed a counterclaim seeking a declaration that the payment of insurance premiums in monthly installments does not involve a lending transaction to which the usury statutes apply. Both parties filed motions for summary judgment. The trial court, in granting summary judgment in favor of Progressive, ·found that Progressive's installment payment plan was not a loan,

financing, or any form of an extension of credit to Progressive's policyholders and that the late fees Progressive charged its policyholders did not constitute interest under the Texas usury statutes. We will affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants individually purchased Texas standard automobile policies from Progressive and made premium payments consistent with an installment payment plan as authorized by Manual Rule 14 of the Texas Automobile Rules and Rating Manual. Appellants, by agreement, were charged service charges in accordance with Manual Rule 14.[1] In addition to this service charge, Progressive assesses a six dollar late fee for each premium installment payment post marked later than two days after the date on which the payment is due. Domizio was charged the six dollar late fee on his $62.38 installment payment, and the Valenzuelas were also charged six dollars for late payment of their $79.12 installment payment.

Appellants filed this lawsuit as a prospective class action on behalf of all persons in Texas who had been charged by and paid a late fee to Progressive in connection with installment payment plans for automobile and motorcycle insurance policies issued by Progressive. Appellants alleged that the late fees Progressive collected constituted usurious charges of interest. In addition, appellants alleged that these late fees were improper and unenforceable liquidated damages. Appellants filed a motion for class certification, and both parties filed motions for summary judgment. On April 11, 2000, the trial court declined

---

1. Manual Rule 14(A)(6) provides, "An insurer which provides the installment plan itself or through an affiliate may charge a monthly service charge of no more than $3.00 for providing the installment payment plan. The monthly service charge may be increased by $0.50 for each $250 by fraction thereof by which the annual premium exceeds $500."

to hear appellants' motion for class certification and instead granted Progressive's motion to sever and abated the class action pending a final, non-appealable adjudication of appellants' threshold legal question: whether the late fees were usurious. On May 17, 2000, the trial court denied appellants' motion for summary judgment and granted Progressive's motion for summary judgment. The trial court found that Progressive's installment plan was not a loan, financing, or extension of credit, and that the late fees were not usurious. Appellants appeal from the April 11 and May 17 orders.

## DISCUSSION

### Standard of Review

To prevail on summary judgment, a plaintiff must conclusively establish all elements of his cause of action as a matter of law. Tex.R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex.1979). On the other hand, a defendant who moves for summary judgment must disprove at least one essential element of each of the plaintiff's theories of recovery or conclusively establish each element of an affirmative defense. Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). We disregard all conflicts in the evidence and accept the evidence favoring the nonmovant as true. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965); *Kehler v. Eudaly*, 933 S.W.2d 321, 324 (Tex.App.—Fort Worth 1996, writ denied). We indulge every reasonable inference from the evidence in favor of the nonmovant and resolve any doubts in its favor. *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997).

When the parties file competing motions for summary judgment and one is granted and the other denied, the reviewing court should review the summary-judgment evidence presented by both sides and determine all questions presented. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex.1997). This Court may reverse the judgment of the trial court and render such judgment as the trial court should have rendered, including rendering judgment for the other movant. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988).

A party may also move for a "no-evidence" summary judgment. Tex.R. Civ. P. 166a(i). Such a motion asserts that there is no evidence of one or more essential elements of claims upon which the opposing party would have the burden of proof at trial. *Id.*; *McCombs v. Children's Med. Ctr.*, 1 S.W.3d 256, 258 (Tex.App.—Texarkana 1999, no pet.). Unlike a movant for traditional summary judgment, a movant for a no-evidence summary judgment does not bear the burden of establishing a right to judgment by proving each claim or defense. *McCombs*, 1 S.W.3d at 258. A no-evidence summary judgment is essentially a pretrial directed verdict, to which we apply the same legal sufficiency standard of review. *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex.App.—Austin 1998, no pet.). A no-evidence summary judgment is properly granted if the nonmovant fails to produce more than a scintilla of probative evidence raising a genuine issue of fact as to an essential element of a claim on which the nonmovant would have the burden of proof at trial. Tex.R. Civ. P. 166a(i); *Jackson*, 979 S.W.2d at 70–71.

### Usury

In their first issue on appeal, appellants complain that the trial court erred in finding that the late fees assessed by Progressive did not constitute usurious interest. Specifically, appellants argue that the six

dollar late fee Progressive charged is interest because it is compensation for the detention of money due. In addition, they argue that Progressive's installment plan involves an extension of credit and is therefore subject to Texas's usury statutes. And finally, appellants contend that they did not agree to pay the late fee and that the fee exceeds the maximum legal rate of interest that can be charged, thereby subjecting Progressive to the penalty of forfeiture.[2]

■ The essential elements of a usurious transaction are: (1) a loan of money, (2) an absolute obligation that the principal be repaid, and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower. *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982); *Varel Mfg. Co. v. Acetylene Oxygen Co.,* 990 S.W.2d 486, 491 (Tex.App.—Corpus Christi 1999, no pet.); *Pentico v. Mad-Wayler, Inc.,* 964 S.W.2d 708, 714 (Tex. App.—Corpus Christi 1998, pet. denied). Moreover, because usury statutes are penal in nature, they must be strictly construed, and if there is any doubt as to legislative intent to punish the activity complained of under usury statutes, the doubt must be construed in favor of the lender. *Steves Sash & Door Co. v. Ceco Corp.,* 751 S.W.2d 473, 476 (Tex.1988); *Hatzenbuehler v. Call,* 894 S.W.2d 68, 69 (Tex.App.—San Antonio 1995, writ denied). We will first address whether the late fees charged by Progressive constitute interest.

### A. Interest

The Texas Finance Code defines "interest" as the "compensation for the use, forbearance, or detention of money." Tex. Fin.Code Ann. § 301.002(a)(4) (West Supp.

2001). Citing *Varel Manufacturing,* appellants state that "it is well-settled that late charges or late fees fall within the statutory definition of interest." *Varel Mfg.,* 990 S.W.2d at 490–91. Appellants argue that the late charges fall into the category of "contingent additional charges" and are treated as interest if and when a payment is received after the expiration of the grace period. *Id.* As a result, appellants contend that the late fees were charges for the detention of money and therefore constitute interest. *See Butler v. Holt Mach. Co.,* 741 S.W.2d 169, 173–74 (Tex.App.—San Antonio 1987, writ denied) (holding that detention of money arises when debt has become due and debtor withholds payment without new contract giving debtor right to do so). Appellants also contend that the statutory definition of interest does not strictly require a lending transaction, but also can apply to any situation where credit is extended. They argue that Progressive's business practice amounts to an extension of credit to its customers. Appellants misconstrue the usury statute.

The Texas Supreme Court has held that "it is a fundamental principle governing the law of usury that it must be founded on a loan or forbearance of money; if neither of these elements exist, there can be no usury." *Crow v. Home Sav. Ass'n,* 522 S.W.2d 457, 459 (Tex.1975). Our usury statutes are derived from the Texas Constitution, which provides the following grant of authority to the legislature: "The legislature shall have authority to classify *loans and lenders,* license and regulate *lenders,* define interest and fix maximum rates of interest." Tex. Const. art. XVI, § 11 (emphasis added). It is apparent

---

2. *See* Tex. Fin.Code Ann. §§ 305.001–.003 (West.Supp.2001). Appellants' causes of action accrued in 1998. In 1999, the legislature amended these sections of the Finance Code;

however, for our purposes here, these changes do not affect the substance of the opinion. Therefore, as a matter of convenience, we will cite to the current statute.

from the language of the provision that it was drawn to govern only *lending and credit* transactions. *See Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 440 (Tex.1993).

■ Pursuant to this grant of authority, the legislature has enacted a statute addressing maximum rates of interest, which includes a definition of "interest." *See* Tex. Fin.Code Ann. § 301.002(a)(4). Therefore, for the usury laws to apply, there must be an overcharge by a lender for the use, forbearance, or detention of the lender's money. *Solomon v. Briones*, 805 S.W.2d 916, 917 (Tex.App.—San Antonio 1991, writ denied).

■ The "use" of money referred to in the Finance Code is that which is contracted for when a loan is made. *Tygrett v. University Gardens Homeowners' Ass'n*, 687 S.W.2d 481, 483 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (citing *Parks v. Lubbock*, 92 Tex. 635, 51 S.W. 322, 323 (1899)). "Forbearance" occurs when a debt is due or to become due, and the parties agree to extend the time for the payment of the debt. *Id.* Appellants concede the point that there was no use or forbearance within the meaning of the usury statute. Clearly Progressive did not transfer any funds to appellants for their use, and therefore no agreement for the extension of time of payment could exist. Appellants' contention instead is that the late fees were charges for the detention of money owed (premiums owed) and therefore constituted interest.

■ The "detention of money," within the meaning of the usury statute, arises when a *debt* has become due and the *debtor* has withheld payment without a new contract giving him the right to do so. *Id.* Because usury must be founded on an overcharge by a *lender* for the use, forbearance, or *detention of the lender's mon-*ey, the definition of "detention" necessarily requires a lending transaction between the parties. *Stedman v. Georgetown Sav. & Loan Ass'n*, 595 S.W.2d 486, 489 (Tex. 1979); *Crow*, 522 S.W.2d at 459; *Tygrett*, 687 S.W.2d at 483. Thus, if at all, Progressive can be held to have overcharged appellants for the detention of money only if appellants *detained* Progressive's money. That is to say, due to a previous lending transaction between the parties, a debt owed by appellants to Progressive must have become due and appellants must have withheld payment without having a contractual right to do so. In the present case, the evidence reflects that no such lending relationship existed between Progressive and appellants. Furthermore, there was no obligation imposed upon the appellants to make a payment.

The events here are typical of those in the world of insurance; however, this is not what the usury statutes were designed to prohibit. In those instances where an installment payment plan is desired, an initial payment is made by an insured who obtains coverage for a designated period of time. At the end of that designated period, the next payment becomes due for an additional period of time, *if* the policy is to be continued. At all times, the insured is in control of the process. If the insured desires coverage for an additional period of time, then payment is made. There is no obligation imposed upon the insured; one simply pays for the coverage that one desires. Non-payment of the premium will result in a lapse of the policy. Thus, there is no "debt" owed and there is no "debtor." Therefore, there is no "detention" of money within the meaning of the usury statutes. That being the case, there is no interest involved. While late fees might result from untimely payment of installments, they cannot, for the reasons stated, be considered interest.

Viewing the transaction at issue here through the lens of a narrow construction of the usury statute, we cannot say that this is "the abusive practice in consumer and commercial credit transactions" which the usury statutes are designed to correct. *Sage St.*, 863 S.W.2d at 440. We therefore hold that this was not a detention of money and that the late fees charged by Progressive did not constitute interest.

### B. Extension of Credit

Appellants further argue that Progressive's installment plan is an extension of credit thereby subjecting it to the usury statutes. Appellants contend that an extension of credit is a necessary element of all installment transactions. In their brief, appellants state that "Progressive's installment plan is the equivalent of an account whereby a good or service is purchased up front and paid for over time. It is an account as well as a contract ascertaining the amount payable without an agreement to pay a specific rate of interest." Therefore, appellants argue, such a transaction is governed by the Texas usury statutes. Moreover, appellants contend that Progressive extended credit to Domizio by providing him with insurance prior to receiving a payment. Additionally, appellants argue that Progressive extended credit by continuing to provide coverage beyond that period which was obtained by the initial payment.[3]

Progressive argues that it requires the premiums be paid in advance of receiving coverage and that it only receives and retains payment for premium amounts which are fully earned. If for any reason, including nonpayment of the premium, one of Progressive's policies is canceled, the policyholder is refunded, or not charged, the unearned portion of the premium. Progressive maintains that Domizio's policy was cancelled for nonpayment of his premium and he was not charged for the unearned premium.

The trial court, in granting Progressive's motion for summary judgment, relied on *Potomac Leasing Co. v. Housing Authority of the City of El Paso*, 743 S.W.2d 712 (Tex.App.—El Paso 1988, writ denied). The court of appeals in *Potomac Leasing* held that the charging of excessive interest, which constitutes usury in a credit transaction, does not apply in a lease or rental transaction. *Id.* at 713. The court in *Potomac Leasing* reasoned that under the normal lease agreement, the first payment is made when the equipment or property is delivered. Monthly payments extend the lease and the right to possession of the item under lease. The normal loan transaction involves credit, and in an open account transaction, credit is extended from the date of purchase to the date of payment. A violation of the usury statute in those cases results from a credit transaction. That is not the case under a bona fide lease agreement. *Id.*

In the present case, Progressive contends that its installment payment plan is closely analogous to a rental or lease transaction, which transaction the court in *Potomac Leasing* found not to be usurious. *See id.* Progressive argues, and we agree, that its policyholders make an initial payment prior to the inception of coverage and then make subsequent payments to continue coverage. The policyholder does not have a continuing obligation to make the payment over the term of the policy coverage; if he ceases payment, his cover-

3. Appellants contend that the inception date of Domizio's policy was March 2, 1999, but that he did not pay the down payment of his premium until March 15, 1999. Appellants also assert that Progressive continued coverage for almost a month beyond the time for which Domizio's payment provided.

age will be terminated. This is different from a rental or lease transaction where the lessee is obligated to continue paying rent over the term of the lease. The Progressive policyholder has no continuing obligation; the policyholder can cancel the policy at any time and is required to pay only what Progressive has earned as of the date of the cancellation. Therefore, we conclude that Progressive's installment payment plan was not an extension of credit. To the extent that appellants may have received days of coverage without having made the necessary payment, under the circumstances we consider that fact to be *de minimis*. A contrary approach would be entirely inconsistent with sound public policy and at odds with existing law.[4]

In the alternative, appellants argue that there is at least an issue of material fact as to whether Progressive extended credit to its policyholders. However, we conclude that Progressive has established as a matter of law that it did not extend credit to its policyholders. We overrule appellants' first two issues.

### Liquidated Damages

■■■■ In their third issue, appellants argue that "[t]he trial court erred in granting Progressive's motion for summary judgment on Appellants' claim that the late charges constitute unenforceable liquidated damages because the claim is a viable cause of action and the trial court failed to afford Appellants an opportunity to amend to sufficiently state their claim." In their third amended petition, appellants added an additional cause of action alleging that the late fees constituted unenforceable liquidated damages because the fees bore no relationship to any losses Progressive suffered. Progressive special-

ly excepted claiming that this count failed to state a cause of action for which the trial court could grant relief. Progressive filed a no-evidence motion for summary judgment stating that appellants had "no cause of action for 'recovery of improper late charges.'" After a careful review of appellants' responses to Progressive's motion for summary judgment and appellants' own motion for summary judgment, we conclude that appellants failed to marshal a scintilla of probative evidence to raise a genuine issue of material fact as to this alleged cause of action for which appellants would have the burden of proof at trial. *See Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). The burden of proving whether a liquidated damage is a penalty is upon the party seeking to invalidate the clause. *Baker v. International Record Syndicate, Inc.*, 812 S.W.2d 53, 55 (Tex.App.—Dallas 1991, no writ). Progressive argues in its brief on appeal that no such cause of action exists as affirmative relief. Because we have concluded that appellants failed to meet their summary judgment burden, we need not address Progressive's argument. Appellants' third issue is overruled.

### Breach of Contract and Unjust Enrichment

■■■ Appellants complain in their fourth issue that the trial court erred in rendering judgment on their breach of contract and unjust enrichment claims contained in their fourth amended petition. Appellants filed their fourth amended petition on May 4, the day of the summary-judgment hearing, asserting for the first time breach of contract and unjust enrichment claims. Similarly, Progressive filed its plea in abatement and amended answer

---

4. *See* Tex. Ins.Code Ann. art. 21.49–2B, § 4(g) (West Supp.2001). Cancellation of a policy may not take effect until the tenth day after the date the insurer mails notice of the cancellation to the insured.

on that same day. The trial court's order granting Progressive's summary judgment and denying appellants' states that it examined only "the pleadings *timely filed*, the motions for summary judgment, the response filed by the Plaintiffs, the summary judgement evidence admitted for consideration, and the applicable case law." (Emphasis added.) Nowhere in the trial court's order does it appear that it considered Progressive's plea in abatement and amended answer or appellants' fourth amended petition. The order specifically found that Progressive's installment payment plan was not a loan, financing, or any other form of an extension of credit and that the late fees did not constitute interest under the Texas usury statutes.

Rule 63 of the Texas Rules of Civil Procedure states that "parties may amend their pleadings ... provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, ... shall be filed only after leave of the judge is obtained." Tex.R. Civ. P. 63. A summary-judgment hearing is a trial within the meaning of Rule 63. *Goswami v. Metropolitan Sav. & Loan Ass'n,* 751 S.W.2d 487, 490 (Tex. 1988); *West Tex. Gas, Inc. v. 297 Gas Co.,* 864 S.W.2d 681, 685 (Tex.App.—Amarillo 1993, no writ). Although this Court may presume that an amended pleading, filed late but before the summary-judgment hearing, was considered by the trial court if the record is silent as to any basis to conclude it was not considered, *Goswami,* 751 S.W.2d at 490, that is not the case here. Having determined that appellants failed to request leave from the trial judge to amend their pleadings, we conclude that their fourth amended petition was not timely filed. Therefore, we overrule appellants' fourth issue on appeal.

### Class Certification

In their fifth issue, appellants argue that the trial court abused its discretion in severing the class claims and abating those claims until there was a final, non-appealable adjudication of the usury questions. There is no right to bring a lawsuit as a class action. *Vinson v. Texas Commerce Bank-Houston, N.A.,* 880 S.W.2d 820, 824 (Tex.App.—Dallas 1994, no writ). The trial court *may* certify a class action if the plaintiff satisfies the requirements of Rule 42(a), *see* Tex.R. Civ. P. 42(a); however, Texas law does not require that a trial court certify a class upon the determination that the facts sufficiently satisfy Rule 42(a). *Vinson,* 880 S.W.2d at 824. The grant or denial of class certification will be upheld on appeal so long as the trial court acted rationally in the exercise of its discretion. *Id.* Even if certification would have been proper, a denial may still not be an abuse of discretion. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985); *Vinson,* 880 S.W.2d at 824.

A trial court's decision to grant a severance will not be reversed unless the court has abused its discretion. *Liberty Nat'l Fire Ins. Co. v. Akin,* 927 S.W.2d 627, 629 (Tex.1996). Similarly, a trial court has the discretion to abate an action so that claims may be presented in an orderly fashion. *Dolenz v. Continental Nat'l Bank,* 620 S.W.2d 572, 575 (Tex. 1981). A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles. *Downer,* 701 S.W.2d at 241–42. This Court may not reverse for an abuse of discretion merely because we disagree with the decision of the trial court. *Id.* at 242.

In order to show the trial court abused its discretion, appellants must demonstrate that the undisputed evi-

dence *negates* any valid rationale by which the trial court could have denied class certification. *Vinson,* 880 S.W.2d at 825. We have previously concluded that the late fees Progressive charged its policyholders for untimely payments are not interest and therefore not subject to the usury statutes. Therefore, we conclude that a class action in the instant case was not necessarily superior to other methods of adjudication. *See id.* Because resolution of the threshold issue, whether the late fees constitute interest and are usurious, defeats the rights of the plaintiffs to bring this lawsuit, the interest of sound judicial economy dictates that the resolution be reached before the effort and expense of class certification and notification are undertaken. *See id.* (holding that questions of manageability, litigation expense, and judicial economy are relevant to class actions). As a result, there is no justiciable controversy meriting class certification. The trial court did not abuse its discretion in severing and abating appellants' claims. Appellants' fifth issue is overruled.

### *Progressive's Counterclaim for Declaratory Judgment*

In their final issue, appellants complain that the trial court erred in granting summary judgment on Progressive's counterclaim for declaratory relief because the counterclaim itself failed to assert a claim for affirmative relief. *See Howell v. Mauzy,* 899 S.W.2d 690, 706 (Tex.App.—Austin 1994, writ denied). Progressive filed a motion for summary judgment on appellants' causes of action and on its counterclaim for declaratory judgment. Because we have concluded that the trial court properly granted Progressive's motion for summary judgment on appellants' causes of action, we need not address whether Progressive's counterclaim for declaratory judgment was improper. Moreover, the issues appellants raise on appeal all com-

plain that the trial court erred in granting Progressive's motion for summary judgment; none of the issues, save the final issue, complain that the trial court based its decision on Progressive's counterclaim. Therefore, appellants' final issue is overruled.

### CONCLUSION

Having concluded that the late fees charged by Progressive are not interest and therefore not subject to the usury statutes and having overruled all of appellants' issues on appeal, we affirm the judgment of the trial court.