TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING








NO. 03-04-00314-CV






Kathleen Hagan n/k/a Kathleen Horne, Appellant


v.


David Pauszek, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT

NO. GN102404, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 To address issues raised in David Pauszek's motion for rehearing, we withdraw our
opinion and judgment dated March 31, 2005, and substitute this opinion in its place. We overrule
the motion for rehearing.

 David Pauszek sued his neighbor Kathleen Hagan (1) to enforce an agreement that
Hagan made with David Pauszek's now deceased mother, Shelley Pauszek, to grant an easement to
run water lines across Hagan's property. The trial court granted summary judgment in favor of
David Pauszek. (2) Because the trial court erred by determining the location and scope of the easement
as a matter of law, and by finding that Hagan had an obligation to grant an easement, we reverse the
summary judgment and remand the case for further proceedings.


BACKGROUND



 Hagan and David Pauszek own homes on neighboring tracts of land. Hagan and her
former husband, Kenneth Hagan, originally owned both homes that shared a water supply from a
well on the land now owned by David Pauszek. Pursuant to the Hagans' divorce, Kenneth Hagan
was awarded the land with the well; Kathleen Hagan was allowed to use water from the well. 
Kenneth Hagan suffered a foreclosure and the property was purchased by Shelley Pauszek in 1993. 
In 1994, in conjunction with a separate land transaction, Kathleen Hagan and Shelley Pauszek
entered into a Temporary Water Agreement concerning the supply of water to the Hagan property
and the Pauszek property. Shelley Pauszek conveyed her property to her son David Pauszek in June
1997. This dispute between David Pauszek and Hagan concerns the rights and obligations of those
parties under the Temporary Water Agreement between Hagan and Shelley Pauszek.


Temporary Water Agreement


 As part of the agreement, Shelley Pauszek promised to continue providing water from
the well to Hagan for a specified period of time. During that time, a grant proposal was pending to
extend water service to the two properties and surrounding neighbors. The agreement describes the
grant proposal:

It is possible that the Hill Country Water Supply ("Water Company") may be in a
position to extend water utility services to the Hagan Property and Pauszek Property,
and Hagan and Pauszek desire to set forth their agreement with respect to the supply
of water by the Water Company as well as easements, water lines and water meters
which may be required by the Water Company.


* * *



Hagan has advised Pauszek that a grant proposal ("Grant") has been submitted to
appropriate governmental authorities ("the Grant Authority") which, if approved
would pay the cost of the Water Company extending a water main to the property line
of the Hagan Property or to a location within the Hagan Property. In addition, and
as an inducement to Mrs. Pauszek to permit Mrs. Hagan to use the Water Well, Mrs.
Hagan has advised Pauszek that if the Grant is approved, the Grant will run to the
benefit of Mrs. Pauszek, and all costs (including all water company installations fees
and tap fees) of extending a water line from the water main through the Hagan
Property to the Pauszek Property shall be paid out of the Grant.



The agreement provides for two contingencies. If the Grant is not approved, Hagan must terminate
her use of the Pauszek well and find her own water supply. If the Grant is approved, Hagan must
grant Shelley Pauszek an easement across Hagan's property to allow Shelley Pauszek to connect to
the water main:


If the Grant is approved, then Hagan agrees to permit Pauszek, at no expense to
Pauszek, to have an easement across the Hagan Property for the purposes of running
a water line from the water main of the Water Company to the Pauszek Property. 
The location of the easement, size of the easement, size of the water lines, and other
pertinent specifications for the easement shall be determined by the Water Company
or the requirements of the Grant or both, as applicable. In the alternative, if the
Water Company will permit Pauszek to have separate water lines routed to the
Pauszek Property through property other than the Hagan Property, Pauszek may, if
Pauszek so elects, use the alternative route for the water lines. (3)

In this appeal, Hagan does not challenge David Pauszek's standing as the present owner of the
Pauszek property to sue to enforce the agreement signed by his mother in the trial court. (4) Instead,
she contends that the Temporary Water Agreement is not enforceable under its own terms.


David Pauszek's Ineligibility for the Grant


 Hagan presented evidence in opposition to summary judgment that, when it was
discovered that David Pauszek, not Shelley Pauszek, lived on and owned the property, the Grant
Authority would not pay to extend water lines to the Pauszek property. Hagan submitted the
affidavit of Judy Langford, the president of the consulting firm responsible for administering the
Grant. Langford explained that the Grant was for the benefit of households of low-to-moderate
income. She stated that she read a December 1995 newspaper article indicating that David Pauszek
had pleaded guilty to illegally using his job with the Federal Deposit Insurance Corporation to
arrange for his mother's purchase of the Pauszek property at below market value. The article
reported that David Pauszek agreed to pay restitution to the FDIC, and the government did not seek
forfeiture of the property. (5) Langford then spoke with David Pauszek, who confirmed that
information provided on his mother's grant application for water was false and additionally that
he--not his mother--was living on the property. Based on that conversation, Langford dropped the
Pauszek property from the grant proposal. In a second affidavit, Langford explained that, had the
Pauszek property been included in the Grant, she would have worked with Hagan and David Pauszek
to determine the location and specifications of the required easement across Hagan's property. If
Hagan had requested, the easement would have included provisions to protect Hagan's property and
would not have impinged on her home. The expenses for obtaining the easement, such as a survey,
would have been eligible for Grant reimbursement.


Water Connections


 The Grant was eventually approved and a water main was extended to the Hagan
property. During that construction, Hagan and David Pauszek discussed a possible easement to
connect the Pauszek property to the water main. Hagan suggested a route for the water lines that ran
through her property at some distance from her home. David Pauszek obtained bids for running the
lines at that location, determined that the cost was too expensive, and rejected the offer of an
easement along the suggested route.

 Hagan again attempted to accommodate David Pauszek by allowing him to
temporarily connect to the water main by using the existing water lines that previously connected
Hagan's home to the well on the Pauszek property. In a letter to David Pauszek, Hagan stated that
the connection was a temporary measure and that she did not want to grant David Pauszek an
easement along that line. The proposed agreement noted her concern that the existing line ran
extremely close to Hagan's home and several massive trees and detailed how the lines must be
maintained. (6) The agreement also required David Pauszek to promise not to sue. David Pauszek
rejected the offer and brought suit to enforce the original agreement by compelling Hagan to grant
an easement along the existing water connection.


Litigation


 The trial court granted partial summary judgment in favor of David Pauszek, holding
that the Temporary Water Agreement was enforceable and that Hagan was required under the
agreement to grant David Pauszek an easement along the established water connection. David
Pauszek then filed a "Motion for Final Summary Judgment" seeking specific performance of this
agreement. In February 2004, the trial court entered a final judgment specifically ordering Hagan
to convey an easement across her property along the existing water connection.

 The final judgment specified that the new easement allows David Pauszek the right
to "erect, construct, install and lay and thereafter use, operate, inspect, repair, maintain, replace, and
remove water distribution lines." It provided that the easement "shall not exceed 15 feet in width
. . . the centerline being the [existing] pipeline . . . ." It further provided that David Pauszek would
be entitled to "keep the Easement area clear of all obstructions which may endanger or interfere with
the proper maintenance and operation of the water lines . . . including the right to remove or prevent
the construction of any or all buildings, structures or other improvements within the Easement Area." 
Finally, the judgment granted David Pauszek the right to recover the $2000 expense of the survey
of the existing water line and attorney's fees in the amount of 23,247.12. (7)


DISCUSSION



 Hagan raises five issues challenging the summary judgment granted in favor of David
Pauszek. She contends that David Pauszek failed to show the absence of a question of material fact
regarding (1) her duty to convey an easement under the contract, (2) the location and scope of the
easement granted, (3) whether David Pauszek fraudulently induced Hagan to enter into the contract,
(4) whether David Pauszek waived his right to an easement, and (5) whether David Pauszek's
attorney's fees were reasonable and necessary.


Summary Judgment Standard


 Because the propriety of a summary judgment is a question of law, we review the trial
court's decision de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); Texas Dep't
of Ins. v. American Home Assurance Co., 998 S.W.2d 344, 347 (Tex. App.--Austin 1999, no pet.). 
A party moving for summary judgment must conclusively establish the absence of any genuine
question of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P.
166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). Every reasonable
inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. 
American Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Nixon, 690 S.W.2d at 549. 
We disregard all conflicts in the evidence and accept the evidence favoring the nonmovant as true. 
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965);
Domizio v. Progressive County Mut. Ins. Co., 54 S.W.3d 867, 871 (Tex. App.--Austin 2001, pet.
denied).


Location and Scope of Easement

 Hagan contends that the district court erred by (1) establishing the easement along
the existing water connection between the two homes and (2) allowing David Pauszek to install
multiple water distribution lines. The trial court's summary judgment was based on the holding of
the supreme court in Houston Pipe Line Co. v. Dwyer, 374 S.W.2d 662, 666 (Tex. 1964). In Dwyer,
the supreme court determined that a perpetual easement that did not specify its location and scope
became fixed and certain when the pipe was laid with the consent and acquiescence of the grantor. 
Id. Following Dwyer, the district court set the easement along the existing water connection on the
Hagan property.

 However, we find that the underlying rational in Dwyer is not applicable to the
present case. In Dwyer, the pipeline was constructed directly after the easement was granted. See
374 S.W.2d at 663. Under those circumstances, it is reasonable to assume that the construction was
consistent with the intended terms of the easement. Here, the pipeline upon which the district court
based the easement was originally laid for a different purpose than that of the easement. At the time
the pipe was laid, Hagan and her husband owned both properties and intended only to bring water
from a well on one property to a home on the other. It would make no sense to presume that the
laying of pipes to connect a home to a well owned by the same parties would have been intended to
set the terms of a perpetual easement granted years later to a stranger in order connect his home to
a public water supply. More importantly, Hagan did not consent or aquiese to placement of an
easement along the existing water line. Hagan's letter agreeing to the temporary connection along
the existing water line expressly disagreed to conveying a perpetual easement in that location. The
Dwyer principle is inapplicable to these facts. Because Dwyer is inapplicable, we hold that the
location and scope of the easement cannot be determined as a matter of law.

 The summary judgment evidence clearly raises an issue of material fact as to the
location and scope of the easement. The easement reflected by the district court's judgment would
extend at least ten feet into Hagan's home and would permit David Pauszek to remove that portion
of the home or prevent any remodeling or construction in within the easement. Hagan stated
repeatedly in her various affidavits that she did not intend to grant an easement along the existing
water lines. Hagan also presented a letter she drafted as a proposed agreement with David Pauszek
that reflects her intent to greatly limit his rights to use the existing water line.

 Additionally, Hagan complains that nothing in the Temporary Water Agreement
contemplates the running of multiple water lines as reflected in the final summary judgment. (8) She
stated by affidavit that she had discussed the issue of multiple lines with David Pauszek and that she
only intended to permit the installation of one water line. Based on this record, Hagan has raised a
question of material fact regarding the intended location and scope of the easement. (9) The district
court erred by setting the location and scope of the easement based on Dwyer. Under the present
circumstances, the location and scope of any easement anticipated by the Temporary Water
Agreement must be determined from the intent of the parties as reflected in the language of the
agreement. 


Duty to Convey an Easement


 Hagan also contends that the trial court erred by determining that she had a duty to
convey an easement to David Pauszek under the contract. She argues that the participation of the
Pauszek property in the Grant was a condition precedent to her obligation to perform under the
agreement, and the Pauszek property was excluded from the Grant. (10)

 A condition precedent to an obligation to perform is an act or event that must occur
subsequent to the formation of a contract before there is a right to immediate performance and before
there is a breach of a contractual duty. Hohenberg Bros. Co. v. George E. Gibbons & Co., 537
S.W.2d 1, 3 (Tex. 1976); II Deerfield Ltd. Partnership v. Henry Bldg., Inc., 41 S.W.3d 259, 264
(Tex. App.--San Antonio 2001, pet. denied). Hagan contends that the agreement contained a
condition precedent that the Grant be approved to extend water to the Pauszek property. David
Pauszek does not dispute that the approval of the Grant was a condition precedent but maintains that
the condition only requires that the Grant be approved to extend water to Hagan's property.

 We look to the agreement to ascertain and give effect to the parties' intentions as
expressed in the document. Lopez v. Munoz, Hockema, & Reed, L.L.P, 22 S.W.3d 857, 861 (Tex.
2000). We examine and consider the entire writing in an effort to harmonize and give effect to all
the provisions of the contract so that none will be rendered meaningless. Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983). "[C]ourts must be particularly wary of isolating from its surroundings
or considering apart from other provisions a single phrase, sentence, or section of a contract." State
Farm Life Ins. v. Beaston, 907 S.W.2d 430, 433 (Tex. 1995). If a contract is so worded that it can
be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and it can be
construed as a matter of law. Wal-mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 728 (Tex. 2001). 
"Ambiguity does not arise simply because the parties advance conflicting interpretations of the
contract; for an ambiguity to exist, both interpretations must be reasonable." Id. Whether a contract
is ambiguous is a question of law for the court to decide in light of the circumstances present at the
time the contract was executed. See National Union Fire Ins. Co. of Pittsburg, Pa. v. CBI Indus.,
Inc., 907 S.W.2d 517, 520 (Tex. 1995). If the contract is subject to two or more reasonable
interpretations, the contract is ambiguous, creating a fact issue on the parties' intent. J.M. Davidson,
Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003). We hold that the contract is not ambiguous.

 Considering the original agreement as a whole, we cannot conclude as a matter of law
that the condition precedent it contained is limited to the approval of the Grant only to Hagan's
property. Although the first sentence of the agreement states that the Grant will "pay the cost of the
Water Company extending a water main to the property line of the Hagan Property or to a location
within the Hagan Property," the remainder of the agreement contains other descriptions of the Grant. 
The second sentence states that the Grant will "run[] to the benefit of Mrs. Pauszek, and all costs 
. . . of extending the water line from the water main through the Hagan Property to the Pauszek
Property shall be paid out of the Grant." David Pauszek contends that only the first sentence
describes the Grant. He characterizes this second sentence as a promise by Hagan to convey an
easement and to try to get the government to pay for extending the water lines to the Pauszek
property. But the conveyance of an easement is not mentioned at all in the paragraph, and the
language of the agreement states that the Grant will pay the cost of extending the water line from the
main line to the Pauszek property, not that Hagan will try to secure payment. See Beaston, 907
S.W.2d at 433 (we do not read a single sentence in isolation).

 Furthermore, other provisions of the agreement anticipate that the Grant Authority
will be directly involved in running water lines to the Pauszek property. The agreement provides
that if "the Water Company [will] permit [Shelley] Pauszek to have separate water lines routed to
the Pauszek Property through property other than the Hagan Property," Shelley Pauszek may elect
whether to connect by that alternate route or by crossing Hagan's property. The agreement contains
no alternative provision for who will pay to extend water to the Pauszek property if that property is
not approved to participate in the Grant. Additionally, as we have discussed, the only easement
referred to is one required by the Grant Authority or the Water Company:

The location of the easement, size of the easement, size of the water lines, and other
pertinent specifications for the easement shall be determined by the Water Company
or the requirements of the Grant or both, as applicable.



 The fact that the pertinent specifications for the easement were to be determined by
the Grant Authority or the Water Company clearly indicates that the approval of the Grant for the
benefit of both properties was a condition precedent for the agreement. If the Pauszek property was
not included in the Grant, such omission would render the specifications of the easement
meaningless. It would also leave the important issue of the location and scope of the easement
undefined. We are compelled to avoid this result. See Coker, 650 S.W.2d at 393 (construction of
contract should harmonize and give effect to all provisions of contract so none rendered
meaningless). 

 Reading the original agreement in its entirety, we determine as a matter of law that
the parties intended the participation of both the Hagan and Pauszek properties in the Grant as a
condition precedent to an obligation to convey the easement under the contract. See Sturges, 52
S.W.3d at 728 (when contract is not ambiguous, certain or definite legal meaning or interpretation
of contract is determined as matter of law). That condition did not occur and, therefore, Hagan was
under no obligation to grant an easement to David Pauszek. See Hohenberg Bros., 537 S.W.2d at
3. Therefore, the district court erred by granting summary judgment on the issue of Hagan's duty
to convey an easement. 


CONCLUSION


 We hold that the district court erred (1) in its construction of the condition precedent
contained in the Temporary Water Agreement and (2) by establishing the location and scope of the
contemplated easement as a matter of law in the absence of specifications to be set by the Water
Company or the Grant Authority. Accordingly, we reverse the summary judgment in favor of David
Pauszek that compels Hagan to grant an easement along the existing water connection along with
all costs and attorney's fees assessed. Because we hold as a matter of law that David Pauszek may
not enforce the Temporary Water Agreement, we need not address Hagan's other issues. Hagan did
not seek summary judgment, and, therefore, we remand the case for further proceedings consistent
with this opinion.



 

 Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Reversed and Remanded

Filed: May 26, 2005

1. Appellant now uses the name Kathleen Horne. Because she is listed as Kathleen Hagan
in the agreement at issue, we will refer to her as Hagan.
2. Hagan did not file a cross-motion for summary judgment.
3. Pauszek does not contend that the Temporary Water Agreement, in itself, grants him an
easement. The record reflects that the parties knew how to create an easement had they intended to
do so. As part of the 1994 land transaction between Hagan and Shelley Pauszek, Hagan granted
Shelley Pauszek a perpetual easement granting access across her land. 
4. In an order dated December 3, 2004, we raised the issue of standing on our own motion and
requested supplemental briefing. We now conclude that David Pauszek's authority to enforce an
agreement between Hagan and his mother does not raise a question of standing. See Austin Nursing
Center v. Lovato, 48 Tex. Sup. Ct. J. 624 Tex. LEXIS 386, at *8-10 (Tex. May 13, 2005); Nootsie,
Ltd. v. Williamson County Appraisal Dist., 926 S.W.2d 659, 661 (Tex. 1996). A challenge to David
Pauszek's legal authority to enforce the agreement as a successor in interest must be raised by a
verified objection at trial and raised on appeal. See CHCA E. Houston, L.P. v. Henderson, D.D.S.,
99 S.W.3d 630, 633 (Tex. App.--Houston [14th Dist.] 2003, no pet.).
5. The article also stated that David Pauszek had loaned his mother the money to purchase
the property.
6. A survey of the existing water line showed that it passes within 4.6 feet from Hagan's
home. In a discovery response filed with the district court, Hagan stated that the water line is within
six feet of her living room window and less than three feet from the sunroom in the back of her
home.
7. In addition, the final judgment contained a list of fees in the event of an appeal to this Court
including $15,000 for briefing an appeal, $3,500 for oral argument, $5,000 for a motion for
rehearing, and $5,000 for a motion for rehearing en banc. In the event of a petition for review in the
supreme court, the judgment awards $7,500 for the response to a petition for review, $15,000 for
briefing on the merits, $5,000 for oral argument, and $5,000 for a motion for rehearing. 
8. The final summary judgment allows David Pauszek to "erect, construct, install and lay and
thereafter use, operate, inspect, repair, maintain, replace, and remove water distribution lines."
(Emphasis added.) 
9. We also note that the Temporary Water Agreement is ambiguous as to who pays for the
expenses of the easement. Although the agreement states that Hagan will grant the easement "at no
expense to Pauszek," it also states that the costs associated with running a line from the Pauszek
property to the water main would be born by the Grant, not Hagan.
10. David Pauszek averred generally in his original petition that all conditions precedent had
been fulfilled or had occurred; Hagan specifically pleaded in her first amended answer and
counterclaim that the inclusion of the Pauszek property in the Grant was a condition precedent and
that the Pauszek property did not qualify. In light of the record, we reject David Pauszek's
contention, raised in his motion for rehearing, that Hagan waived her argument that a condition
precedent has not occurred. See Tex. R. App. P. 54.